UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REC SOFTWARE USA, INC., | CASE NO. C11-0554JLR |
| Plaintiff, | ORDER |
| v. | |
| BAMBOO SOLUTIONS CORPORATION, et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the court on Plaintiff REC Software USA, Inc.'s ("REC") motion (Mot. (Dkt. # 168)) to strike portions of Defendant Microsoft Corporation's ("Microsoft") Expert Report on Invalidity ("Kogan Report" (Dkt. # 170)), which was prepared by expert witness Dr. Michael Kogan. Having considered REC's motion, Microsoft's response (Resp. (Dkt. # 192)), REC's reply (Reply (Dkt. # 196)), all attachments to the briefs, the balance of the record, and the governing law, and having

ORDER- 1

heard oral argument of the parties on August 9, 2012, the court DENIES REC's motion (Dkt. # 168).

## II.  FACTUAL BACKGROUND

This matter involves a patent infringement suit filed by REC against Microsoft.[1] REC alleges that Microsoft's .NET Framework infringes U.S. Patent No. 5,854,936 (the "Patent-in-Suit"). Discovery is closed, and trial is scheduled to begin on October 1, 2012. REC moves to strike portions of Microsoft's Kogan Report on the grounds that the Report includes prior art references that were not disclosed in Microsoft's invalidity contentions. (*See generally* Mot.)

On August 5, 2011, Microsoft served its invalidity contentions as required by Western District of Washington Local Patent Rule 121. (*Id.* at 4; Resp. at 3.) Microsoft's invalidity contentions listed numerous pieces of prior art which it alleged anticipated or rendered obvious the Patent-in-Suit. (*See generally* Microsoft's Invalidity Contentions (Dkt. # 169-1).) Included in the list of prior art references were the OS/2 and SunOS 4.0+ operating systems. (*Id.* at 10-11.) Microsoft's invalidity contentions also cited to several "exemplary publications" which described the operation of the OS/2 and SunOS 4.0+ operating systems. (*Id.* at 128 (OS/2) and 211 (SunOS 4.0+).)

On April 5, 2012, Microsoft served REC with its expert report by Dr. Michael Kogan, which addressed issues of invalidity. (*See* Kogan Report.) The Kogan Report contains several additional publications, which describe the operation of the OS/2 and

---

[1] The two other defendants named in REC's complaint have been dismissed from the case.

ORDER- 2

SunOS 4.0+ operating systems.  (*Id.* at 59-164.)  These additional publications are listed below:

- H.M. DEITEL AND M.S. KOGAN, THE DESIGN OF OS/2 (discussed at pages 59-66 of the Kogan Report);

- JAMES ARNOLD, SHARED LIBRARIES ON UNIX SYSTEM V (discussed at pages 75, 78-81 of the Kogan Report);

- CURTIS B. DOWNING ET AL., TRANSPARENT IMPLEMENTATION OF SHARED LIBRARIES (discussed at pages 75, 77-78 of the Kogan Report);

- UNIX PROGRAMMER'S REFERENCE MANUAL (discussed at pages 119, 130-131, 164 of the Kogan Report).[2]

In addition to the Four Books, the Kogan Report listed and discussed as prior art the Windows 3.0 operating system source code ("Windows 3.0 Source Code").  (Kogan Report at 67-74, 120-131, 165-174, 206-218.)  Microsoft asserts that it did not locate this piece of prior art until March 17, 2012, at which time it was made available to REC for inspection. (Penner Decl. (Dkt. # 193 ) ¶¶ 18, 19.)  On March 20-23, 2012, REC's consultant reviewed the source code made available to REC, but apparently, unbeknownst to Microsoft, the correct source code had not been updated on the hard drive Mr. Dorfman accessed.[3]  (*Id.* ¶ 20.)  It was not until April 30, 2012, however, that REC informed Microsoft that the proper Windows 3.0 Source Code had not been

---

[2] For the sake of convenience, this discussion will refer to these four publications, collectively, as "the Four Books."

[3] Apparently, the Microsoft 3.0 Source Code was initially made available to Microsoft counsel's Silicon Valley office, but at REC's request, subsequent inspections occurred at counsel's Minneapolis office.  Thus, Microsoft provided duplicate sets of the source code on hard drives at both offices, but inadvertently failed to place the source code on the hard drive reviewed by Mr. Dorfman. (Penner Decl. ¶ 19.)

ORDER- 3

produced, and not until May 3, 2012, that Microsoft fully understood that it had not provided REC with the proper source code. (*Id.* ¶ 21 & Ex. 7.) At that time, Microsoft made the proper Windows 3.0 Source Code available to REC for inspection and offered REC an extension of time to serve rebuttal expert reports, an offer REC declined. (Penner Decl. ¶ 22.)

### III.  ANALYSIS

REC argues that any parts of the Kogan Report that rely on the Four Books or the Windows 3.0 Source Code must be stricken because "they were not disclosed by Microsoft in its Invalidity Contentions," and "Microsoft has not amended its contentions, nor . . . asked the [c]ourt for leave to do so." (Mot. at 4.) Similarly, REC asserts that Microsoft never identified the Windows 3.0 Source Code as prior art in its invalidity contentions and failed to timely disclose the source code, and that REC would suffer undue prejudice if Microsoft is allowed to use this reference. (*Id*. at 5, 13-15.)

**A.  Standard for Amending Contentions**

Local Patent Rule 124 allows the parties to amend infringement and invalidity contentions "only by order of the Court upon a timely showing of good cause." W.D. Wash. Local Patent Rule 124. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include: "(a) claim construction order by the Court different from that proposed by the party seeking amendment; [and] (b) recent discovery of material, prior art despite earlier diligent search." *Id.* The party seeking to amend its contentions bears the burden of establishing diligence. *O2 Micro*, 467 F.3d at 1366-67. A determination of whether

good cause has been established is within the sound discretion of the trial court. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1380 n.5 (Fed. Cir. 2005).

Like the local patent rules in the Northern District of California, this District's Local Patent Rules "requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories."[4] *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). In contrast to the more liberal policy for amending pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q–Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citation omitted). Again, like the Northern District of California, this District's Local Patent Rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been

---

[4] With little precedent on the issue of amending invalidity contentions under this court's Local Patent Rules, the court finds cases interpreting the local patent rules for the Northern District of California helpful because of the similarity between the language of the local patent rules for that district and this court's Standing Patent Order and the Local Patent Rules for this District. *Compare* N.D. Cal. Local Patent Rules 3-3 & 3-6, available at http://www.cand.uscourts.gov/localrules/patent, *with* Patent Order at 2-3; Local Patent Rules 121, 124.

ORDER- 5

disclosed." *O2 Micro*, 467 F.3d at 1366 n.12 (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

Generally, in the Northern District of California, in determining whether good cause exists to amend, courts consider first whether the moving part was diligent in amending its contentions and second whether the non-moving part would suffer prejudice if the motion to amend were granted. *Acer, Inc. v. Tech. Prop. Ltd.*, No. 08-CV-00877, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) ("[The moving party] must demonstrate good cause, an inquiry that considers first whether the moving party was diligent in amending its contentions and then whether the nonmoving party would suffer prejudice if the motion to amend were granted . . . . If [the moving party] was not diligent, the inquiry should end."). In the diligence analysis, some Northern District of California orders have focused on the moving party's diligence in amending contentions, whereas other orders have focused on the diligence of the moving party in searching for new prior art. *Compare Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11–CV–01846–LHK, 2012 WL 1067548, at *2 (N.D. Cal. Mar. 27, 2012) (focusing on diligence in seeking to amend invalidity contentions), *with Streak Prods., Inc. v. Antec, Inc.*, No. C09–04255 RS (HRL), 2010 WL 3515752, at *1 (N.D. Cal. Sept. 8, 2010) (that that in determining whether there is good cause, "the critical issue is whether or not [the moving party] exercised diligence in discovering the prior art"); *Sunpower Corp. Sys. v. Sunlink Corp.*, No. C08–02807 SBA (EMC), 2009 WL 1657987, *1 (N.D. Cal. June 12, 2009) (same). The Northern District of California has also considered factors such as the relevance of and difficulty in locating the newly-discovered prior art and whether the

request to amend is motivated by gamesmanship. *Streak Prods.*, 2010 WL 3515752, at *1.

Courts in this District have not articulated a standard for showing good cause to amend invalidity or infringement contentions under this District's Local Patent Rules. Thus, the court takes this opportunity to put forth such a standard. As stated (*supra* footnote 4), because of the strong similarity between the local patent rules of the Northern District of California and the Local Patent Rules of this District, the court views the Northern District of California cases interpreting their own local patent rules to be of assistance in this court's effort to fashion its own standard.

Accordingly, in the future, the court generally will follow the two-part test for good cause to amend contentions set forth by the Northern District of California: first, examining the diligence of the moving party, and second, upon a finding of diligence, examining the prejudice to the non-moving party. Further, in determining the diligence of the moving party, the court will place emphasis on whether the moving party's actions comport with the purpose behind the federal discovery rules in diligently searching for prior art and developing new theories of invalidity and infringement and diligently providing any new-found prior art or new theories to opposing parties. Additionally, the court expects that upon finding new prior art references or developing new theories, parties will move diligently to amend their contentions. Such a standard will provide certainty to the parties and further the goal behind the Local Patent Rules of requiring "parties to crystallize their theories of the case early in the litigation," but still permit parties to amend contentions based on new information developed in discovery as

1  expected by the federal rules of discovery. *O2 Micro*, 467 F.3d at 1366, 1366 n.12.
2  Finally, the court notes that good cause to amend may also take into consideration the
3  circumstances of the individual case, examining such factors as the relevance of and
4  difficulty in locating the newly-discovered prior art or theory of the case and whether the
5  request to amend is motivated by gamesmanship. With this standard in mind, the court
6  turns to the issues raised by REC's motion.

7  **B.     The Four Books Are Not Prior Art and Need Not Be Stricken**

8         REC argues that the Four Books Microsoft cites must be stricken from the Kogan
9  Report because they were not included in the invalidity contentions. (Mot. at 4.) REC
10 points out that Local Patent Rule 121 requires invalidity contentions to identify "[e]ach
11 item of prior art that allegedly anticipates each [a]sserted [c]laim." (*Id.* at 5.) Microsoft
12 does not dispute that it did not include these references in its invalidity contentions. (*See*
13 *generally* Resp.) Microsoft, however, maintains that the books are not being used as
14 prior art that anticipates or renders obvious the claims. (*Id.* at 4.) Thus, according to
15 Microsoft, it was not required to include the Four Books in its invalidity contentions
16 because they "merely elaborate on the operation of two prior art systems charted" in the
17 invalidity contentions, and because the invalidity contentions had stated that Microsoft
18 would be relying on several unnamed "exemplary publications" for demonstrative
19 purposes. (*Id.*)

20         The court has carefully reviewed the Kogan Report with respect to the portions
21 referencing the Four Books and agrees with Microsoft's characterization of the report's
22 use of the Four Books. Relying on the Four Books, Dr. Kogan describes the operation of

the OS/2 and SunOS 4.0+ operating systems, both of which were disclosed as prior art. (*See* Kogan Report at 59-164.) Thus, the Kogan Report relies on the Four Books in an attempt to explain how the OS/2 and SunOS 4.0+ operating systems anticipate and/or render obvious the Patent-in-Suit by matching the operation of those two references to the patent's claims consistent with the claim chart provided in Microsoft's invalidity contentions. Nowhere, however, does the Kogan Report indicate that any of the Four Books themselves constitute a prior art references or present a new theory of invalidity based on the Four Books, and REC has not provided the court with anything to suggest to otherwise. (*See generally* Kogan Report; Mot.)

Consequently, because the Four Books are not being used as prior art references, Microsoft was not required to include them in its initial invalidity contentions or any amendment thereto. Moreover, Microsoft indicated in its invalidity contentions that it may in the future use other unnamed publications as "exemplary publications," placing REC on notice of its intentions for the Kogan Report. Thus, the court declines to strike the Four Books from the Kogan Report. The court, however, will hold Microsoft to its statements that the Four Books will only be used as "exemplary publications" to describe how the OS/2 and SunOS 4.0+ operating systems operate. *See Brilliant Instruments, Inc. v. GuideTech, Inc.*, No. C 09-5517 CW, 2011 WL 900369, at *2 (N.D. Cal. Mar. 15, 2011).

**C.   Microsoft Exercised Diligence in Locating and Producing the Windows 3.0 Source Code, and REC is Not Prejudiced from Its Inclusion.**

REC contends that Microsoft any references to Windows 3.0 Source Code should be stricken from the Kogan Report because (1) Microsoft failed to identify the Windows 3.0 Source Code as prior art invalidity contentions; (2) Microsoft has no good cause to amend its invalidity contentions; and (3) REC would suffer undue prejudice if Microsoft is now permitted to include the source code as a prior art reference in the Kogan Report. (Mot. at 8-15 (referring to the requirements of Local Patent Rule 124).)  Unlike the Four Books references, Microsoft does not deny that the Windows 3.0 Source Code is a prior art reference that allegedly anticipates the claims asserted in the action.  (*See generally* Resp.)  Microsoft argues, however, that the Windows 3.0 Source Code should not be stricken as prior art because REC does, in fact, have the code; Microsoft exercised diligence in locating and providing that code as quickly as possible; and REC suffers no prejudice as a result of the inclusion of the code. (*Id*. at 9-13.)

A review of the record suggests that in the approximately eight weeks between Microsoft's location of the Windows 3.0 Source Code and REC's filing of this motion, Microsoft focused on ensuring that REC had all of the resources it needed in order to adequately assess and rebut the inclusion of that source code in the Kogan Report. Microsoft has explained to the court the difficulty in obtaining a copy of the Windows 3.0 Source Code, which was created 20 years ago.[5]  (Penner Decl. ¶ 15.)  Upon finding the

---

[5] REC argues that "it strains credulity to think" that a diligent search for prior art conducted by Microsoft would not have uncovered Microsoft's very own Windows 3.0 operating

source code, Microsoft immediately (prior to service of the Kogan Report) provided the source code to REC for inspection and also agreed to an extension of expert discovery. Then, after learning that it mistakenly had failed to provide REC with the proper source code, Microsoft quickly took efforts to rectify the situation and provide the source code to REC at REC's convenience. Thus, the record indicates that Microsoft acted diligently to ensure that REC had access to the code, and that REC had sufficient time to analyze it and respond to Microsoft's expert report. Here, Microsoft's actions are consistent with the spirit of the discovery process. *O2 Micro*, 467 F.3d at 1366 (noting that the purpose of federal discovery rules is to strike the right "balance" between the need to continue developing one's arguments and the obligation to provide fair notice of those arguments to opposing counsel).

      Nevertheless, as REC points out, Microsoft has never moved to amend its invalidity contentions. Indeed, Microsoft had in its possession the Windows 3.0 Source Code for eight weeks before REC filed its present motion. Although the court has found that Microsoft acted diligently in providing REC with notice of and the opportunity to inspect the new-found source code, in these eight weeks, Microsoft could have moved at any time to amend its invalidity contentions, but did not do so. Undoubtedly, the ideal practice would have been for Microsoft to promptly request leave to amend. With that said, the court is mindful that it has not to this point set forth its own standard for

---

system. (Mot. at 11.) Indeed, the court is in fact somewhat skeptical of the length of time required by Microsoft to unearth the Windows 3.0 Source Code that it itself created. Nevertheless, the court recognizes that the search for prior art is a continuous process, leading parties to patent litigation to find prior art until late in the discovery process.

ORDER- 11

diligence in moving to amend invalidity or infringement contentions. Without such a standard in place, the court is not inclined to penalize Microsoft for failing to move for amendment when it has made good-faith efforts to ensure that REC knew about the Windows 3.0 Source Code prior art reference and attempted to provide REC with an opportunity to fully respond to the new reference. In the future, however, the court will be less inclined to be so forgiving of a party's failure to move to amend its contentions to include a significant prior art reference or new infringement or invalidity theory.[6]

Finally, inclusion of the Windows 3.0 Source Code presents no undue prejudice to REC. Indeed, during oral argument REC candidly admitted that it would suffer little prejudice were it permitted to ask questions about the Windows 3.0 Source Code at an upcoming, scheduled deposition. In accord, Microsoft agreed that REC would be permitted to ask its desired questions. Thus, the court finds that REC suffers no prejudice by the inclusion of the Windows 3.0 Source Code as prior art in the Kogan Report. Accordingly, and based on the foregoing, the court denies REC's motion to strike the Windows 3.0 Source Code prior art reference from the Kogan Report.

//

//

//

//

---

[6] Additionally, the court stresses that it expects parties to cooperate in the amendment process. As stated, during the course of discovery, it is expected that new references will be found and new theories developed. As such, parties are encouraged to file stipulated motions to amend, where amendment is appropriate.

## IV. CONCLUSION

For the foregoing reasons, court DENIES REC's motion to strike portions of Microsoft's Kogan Report (Dkt. # 168).

Dated this 15th day of August, 2012.

JAMES L. ROBART
United States District Judge