UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REC SOFTWARE USA, INC., | CASE NO. C11-0554JLR |
| Plaintiff, | ORDER |
| v. | |
| BAMBOO SOLUTIONS CORPORATION, et al., | |
| Defendant. | |

## I.   INTRODUCTION

This matter comes before the court on Defendant Microsoft Corporation's ("Microsoft") motion (Mot. (Dkt. ## 201 (sealed), 202 (redacted)) to strike portions of Plaintiff REC Software USA, Inc.'s ("REC") expert report on infringement, which was prepared by expert witness Dr. John Levine.  Having considered Microsoft's motion, REC's response in opposition (Resp. (Dkt. # 223)), Microsoft's reply (Reply (Dkt. # 233)), all attachments to the briefing, the balance of the record, and the governing law,

ORDER- 1

1  and having heard oral argument of the parties on August 9, 2012, the court GRANTS in

2  part and DENIES in part Microsoft's motion (Dkt. ## 201, 202).

3  ## II.  BACKGROUND

4  This matter involves a patent infringement suit filed by REC against Microsoft.[1]

5  REC alleges that Microsoft's .NET Framework infringes U.S. Patent No. 5,854,936 (the

6  "Patent-in-Suit").  Discovery is closed, and trial is scheduled to begin on October 1,

7  2012.  Microsoft moves to strike parts of the reports of Dr. Levine that rely on .NET

8  Framework source code and infringement theories that Microsoft asserts were not

9  disclosed in REC's infringement contentions.  (*See generally* Mot.)

10  On July 1, 2011, REC served its initial infringement contentions as required by

11  Western District of Washington Local Patent Rule 120.  (*Id.* at 8; Resp. at 4.)  Microsoft

12  served its non-infringement contentions on August 5, 2011, complaining that REC had

13  failed to identify any theory of infringement.  (Resp. at 4.)  REC agreed with Microsoft

14  that REC would provide supplemental infringement contentions after reviewing the

15  accused source code.[2]  (Lyon Decl. (Dkt. # 224) Ex. 2.)  The agreement between the

16  parties provided dates for the provision of supplemental infringement and non-

17  infringement contentions and further stated that the purpose of the agreement "is to

18

19  _____

20  [1] The two other defendants named in REC's complaint have been dismissed from the case.

21  [2] The parties disputed whether REC's initial infringement contentions were sufficient

22  under the local patent rules.  (*See generally* Lyon Decl. Ex. 1.)

ORDER- 2

1  crystallize the issues with respect to infringement, not to foreclose development of

2  additional detail in expert reports consistent with the parties' contentions." (*Id.*)

3        On October 28, 2011, after reviewing the accused source code, REC served

4  supplemental infringement contentions, and Microsoft served its supplemental non-

5  infringement contentions on December 22, 2011. (*Id.* Ex. 3 (REC Infringement

6  Contentions); Mot. at 5.) On April 6, 2012, prior to the court's *Markman* ruling,[3] REC

7  served its expert report on infringement written by Dr. Levine ("1st Levine Report"), and

8  REC served a supplemental expert report[4] ("2nd Levine Report") on July 2, 2012. (Lyon

9  Decl. ¶¶ 4, 5, Ex. 5 (1st Levine Rpt.), Ex. 6 (2nd Levine Rpt.).)

10  ### III.    ANALYSIS

11        By its present motion, Microsoft contends that the 1st Levine Report improperly

12  includes source code references and infringement theories not included in REC's

13  supplemental infringement contentions. (*See generally* Mot.) Microsoft claims that it

14  only became aware of these references and theories after the *Markman* hearing, and thus,

15  that it is prejudiced by not having known about REC's infringement contentions prior to

16  that hearing or when preparing its case. (*Id*. at 9.) Microsoft makes three requests in its

17  motion. First, Microsoft asks the court to strike any sections of the 1st Levine Report

18  relying on portions of the accused source code that were not included in REC's

19

20       [3] The court issued its *Markman* order on April 30, 2012. (*See Markman* Order (Dkt. #

21  159).)

22       [4] Dr. Levine's July 2, 2012 supplemental expert report in large part addresses issues of
indefiniteness and written description. (*See generally* Lyon Decl. Ex. 6.)

1   supplemental infringement contentions.  (*Id.* at 5.)  Second, Microsoft asks the court to

2   strike any references to REC's revised "embedded reference to a discrete module" theory.

3   (*Id.* at 6.)  Third, Microsoft asks the court to strike any references to REC's revised

4   "second multi-module program" theory.  (*Id.*)  Below, the court addresses the three

5   requests in turn.

6   **A.      Standard for Amending Contentions**

7          Local Patent Rule 124 allows the parties to amend infringement and invalidity

8   contentions "only by order of the Court upon a timely showing of good cause."  W.D.

9   Wash. Local Patent Rule 124.  Non-exhaustive examples of circumstances that may,

10  absent undue prejudice to the non-moving party, support a finding of good cause include:

11  "(a) claim construction order by the Court different from that proposed by the party

12  seeking amendment; [and] (b) recent discovery of material, prior art despite earlier

13  diligent search."  *Id.*  The party seeking to amend its contentions bears the burden of

14  establishing diligence.  *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*  467 F.3d

15  1355, 1366-67 (Fed. Cir. 2006).  A determination of whether good cause has been

16  established is within the sound discretion of the trial court.  *See MEMC Elec. Materials,*

17  *Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1380 n.5 (Fed. Cir. 2005).

18         In its August 15, 2012 order in this case, the court articulated for the first time a

19  standard for amending invalidity and infringement contentions under the Local Patent

20  Rules of the Western District of Washington.  (*See* Order (Dkt. # 281).)  Because of the

21  similarity between the local patent rules of the Northern District of California and the

22  Local Patent Rules of this District, the court generally adopted the standard used in the

1  Northern District of California.  (*Id.* at 7.)  In short, the court adopted a two-part test for

2  "good cause" to amend contentions:  first, examining the diligence of the moving party,

3  and second, upon a finding of diligence, examining the prejudice to the non-moving

4  party.  (*Id.* at 7-8.)  Further, the court stated that in examining diligence of the moving

5  party, it would place emphasis on whether the moving party was diligent in searching for

6  prior art and developing new theories of invalidity and infringement and diligent in

7  providing any new-found prior art or new theories to opposing parties.  (*Id.*)

8  Additionally, the court stated that it would expect parties to move diligently to amend

9  their contentions.  (*Id.*)

10 **B.**    **Dr. Levine's Citations to the Accused Source Code**

11       Microsoft contends that the 1st Levine Report is a "wholesale rewrite" of REC's

12  supplemental infringement contentions because the accused citations of Microsoft's .NET

13  source code contained in REC's supplemental infringement contentions are different

14  from the accused citations of the .NET code in the 1st Levine Report.  (Mot. at 7-8.)  As a

15  result, Microsoft asks the court to strike portions of the 1st Levine Report that cite

16  different areas of Microsoft's source code than those cited in REC's supplemental

17  infringement contentions.  (*Id.* at 10.)  REC responds that Dr. Levine's analysis mirrors

18  REC's supplemental infringement contentions and permissibly provides additional

19  evidentiary details not mentioned in the infringement contentions.  (Resp. at 4, 7.)

20       As an initial matter, the parties disagree as to the specificity required in

21  infringement contentions where the accused process is computer or software code.

22  Microsoft contends that to meet its obligations under this District's Local Patent Rules,

1    REC was required to provide "pinpoint citation[s] to the source code that perform[] the

2    allegedly infringing functionality."  (Mot. at 4-5. (citing *Vasudevan Software, Inc. v.*

3    *Int'l. Bus. Machs. Corp.*, No. C09–05897 RS (HRL), 2011 WL 940263, at *7 (N.D. Cal.

4    Feb. 18, 2011)).)  To the contrary, REC asserts that its infringement contentions must

5    "merely provide notice of which aspect of the accused product performs each element,

6    but they need not provide any detailed evidence or analysis to prove that contention."

7    (Resp. at 4-5 (citing *Genentech, Inc. v. Trs. of Univ. of Pa.*, No. C 10–2037 LHK (PSG),

8    2012 WL 424985, at *1 (N.D. Cal. Feb. 9, 2012).)

9        In the Northern District of California, in general, a plaintiff is not required to

10   identify in his infringement contentions "every evidentiary item of proof showing that the

11   accused element did in fact practice the limitation."  *Oracle Am., Inc. v. Google, Inc.*, No.

12   C 10-03561 WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011).  When the

13   allegations involve software, however, courts require plaintiffs to provide "pinpoint

14   citations" to source code once the code has been provided.  *Vasudevan*, 2011 WL

15   940263, at *7 (collecting cases in the Northern District of California, and other courts,

16   that have required pinpoint citations in software patent infringement actions after the

17   source code has been provided to the plaintiff).  Nevertheless, no court in this District has

18   set forth a rule identifying specificity requirements for infringement contentions under

19   Local Patent Rule 120 where the accused product is software code.  Thus, the court takes

20   this opportunity to adopt the rule from the Northern District of California that a plaintiff's

21   infringement contentions should provide pinpoint citations to specific portions of

22   computer code once a plaintiff has had a sufficient opportunity to review the source code.

ORDER- 6

1   In other words, although a plaintiff need not initially provide such specific pinpoint

2   citations in its infringement contentions, once it has had sufficient time to review the

3   accused source code, the plaintiff is under an obligation to promptly and appropriately

4   amend its infringement contentions.

5        Here, REC's infringement contentions generally identify a function in the .NET

6   source code that REC contends performs a *function* that allegedly meets each limitation

7   of the asserted claim of the Patent-in-Suit.  (*See generally* REC Infringement

8   Contentions.)  The 1st Levine Report identifies citations to specific portions of the .NET

9   source code that Dr. Levine asserts correspond to the function set forth in the

10  infringement contentions.  (*See generally* 1st Levine Rpt.)  For example, with respect to

11  the claim limitation "first program" found in the claims of the Patent-in-Suit, REC's

12  infringement contentions state as follows:

13          [O]ne or more portions of the .NET common language runtime of Windows
            7 that execute on a computing system at least the *function* of collecting
14          module information to "form[] an association," as identified in element (e)
            of Claim 1.

15  (REC Infringement Contentions at 1 (emphasis added).)  Then, Dr. Levine's infringement

16  report identifies the "AppDomain" as the specific portion of the .NET source code that

17  performs this function in the supplemental infringement contentions.  (*See* 1st Levine

18  Rpt. at 46-57.)

19      Although REC's infringement contentions, which listed the function in the .NET

20  source code corresponding to each claim limitation, may have been sufficient at the time

21  they were served, once REC had the .NET source code in its possession, REC was under

22

1   an obligation to provide pinpoint citations for each claim limitation.  Yet despite having

2   ample time to review the .NET source code with its expert, Dr. Levine, REC did not

3   amend its infringement contentions to include pinpoint source code citations.  Rather,

4   REC provided such pinpoint citations for the first time in the 1st Levine Report.  REC's

5   failure to amend its infringement contentions are, thus, contrary to the rule adopted by the

6   court in this order.

7          Nevertheless, because neither this court nor any court in this District has

8   previously set forth a standard for the specificity required by Local Patent Rule 120, and

9   amendments thereto under Local Patent Rule 124, in the context of software patent

10  infringement actions, the court declines to hold REC to the standard adopted in this order.

11  The court does not hesitate to excuse REC in this instance, because at oral argument,

12  counsel for Microsoft candidly stated that Microsoft had incurred no prejudice by REC's

13  inclusion of pinpoint citations in the 1st Levine Report.  Moreover, REC provided its

14  supplemental infringement contentions to Microsoft in October 2011 pursuant to the

15  parties' agreement that REC would amend its infringement contentions to provide further

16  specificity.  At that time, and during the succeeding eight-month period, Microsoft did

17  not raise any concerns with regards to the specificity of REC's supplemental

18  infringement contentions.  Thus, during the course of litigation, Microsoft presumably

19  was apprised of REC's infringement allegations and could adequately build its defensive

20  case in reliance of them.  Based on the foregoing, the court denies Microsoft's motion to

21  strike the portions of the 1st Levine Report that provide pinpoint citations not previously

22  identified in REC's supplemental infringement contentions.

1   **C.    REC's Embedded Reference to a Discrete Module Theory**

2          Microsoft next contends that REC has changed its infringement theory regarding

3   the "embedded reference to a discrete module" limitation found in the claims of the

4   Patent-in-Suit.  (Mot. at 10.)  In particular, Microsoft contends that in REC's

5   supplemental infringement contentions, an "embedded reference" was a reference

6   between one module and a *different* module, and that now the 1st Levine Report asserts

7   that an "embedded reference" is a reference, or could be a reference, between one module

8   and the same module (itself).  (*Id.* at 10-11.)  REC's infringement contention for

9   "embedded reference to a discrete module" states:

10         The "embedded reference to a discrete module" is data within the files
           comprising a .NET program that identifies "a discrete module" (identified
11         above).  This data can be found in the application manifest of the .NET
           program, appearing, for example, in a form like the following:  assembly
12         *extern* mscorlib (.publilckeytoken = (B7 7A 5C 56 19 34 E0 89) //
           .z\V.4...ver    2:0:0:0);    assembly    *extern*    System.Windows.Forms
13         (.publickeytoken = B7 7A 5C 56 19 34 E0 89) // .z\V.4...ver 2:0:0:0).

14  (REC Infringement Contentions at 1 (emphases added).)  Although absent in its briefing,

15  at oral argument, counsel for Microsoft explained that based on the word "extern" found

16  in REC's infringement contention, Microsoft assumed that REC meant that an

17  "embedded reference to a discrete module" in fact referenced a module different than the

18  module itself.  In other words, according to Microsoft's understanding, REC's theory of

19  infringement for the "embedded reference to a discrete module" limitation required a

20  module to reference a different "discrete module."

21         Microsoft thus asserts that REC changed its theory of infringement in the 1st

22  Levine Report through the following illustration:

1

2

3

4

5

6

7

8



9

10
(Mot. at 11; 1st Levine Rpt. at 57.)  According to Microsoft, Dr. Levine asserts that the

11
"name of the module" and/or the "version of [the] module" (both identified in the

12
illustration above), which in fact reference the module of code itself, are sufficient to

13
meet the "embedded reference to a discrete module" limitation.  (Mot. at 11.)  REC

14
disagrees with Microsoft's interpretation of the 1st Levine Report and asserts that

15
nowhere in his expert report does Dr. Levine opine that an embedded reference is a

16
reference between one module and the same module itself.  Instead, according to REC,

17
Dr. Levine uses the illustration to show identifying portions of the code module itself and

18
references the *other, different modules*, embedded within this discrete module.  (Resp. at

19
11.)  According to REC, the "dependency names" and "dependency version numbers"

20
(both identified in the illustration above) are in fact the external ("extern," as stated in the

21
portion of .NET source code identified in the illustration) references that meet the

22

1   limitation at issue.  (*Id.* at 10-11.)  Thus, REC explains that Dr. Levine's theory is

2   consistent with REC's supplemental infringement contentions.  (*Id.* at 11.)

3          Here, there is no disagreement between the parties.  The theory of infringement for

4   the "embedded reference to a discrete module" limitation found in the Patent-in-Suit is a

5   reference to a different module than itself.  The court will hold REC to this theory of

6   infringement at trial, but finds no reason to strike any portions of the 1st Levine Report,

7   which, according to REC, in no way alters its infringement contentions or Microsoft's

8   understanding of those contentions.  Accordingly, the court denies Microsoft's motion

9   with respect to Dr. Levine's infringement theory regarding the "embedded reference to a

10  discrete module" limitation.

11  **D.      REC's "Second Multi-Module Program" Theory**

12         Microsoft' argues that REC's theory regarding the "second multi-module

13  program" limitation found in the claims of the Patent-in-Suit has "dramatically" changed

14  from its infringement contentions to the 1st Levine Report.  (Mot. at 13.)  Specifically,

15  REC's infringement contention with respect to this limitation states:  "The 'second multi-

16  module program' is any .NET program executed in Windows 7."   (REC Infringement

17  Contentions at 13.)  In the 1st Levine Report, Dr. Levine provided the following

18  illustration to elucidate his theory of infringement for this claim limitation:

19

20

21

22

ORDER- 11

(Mot. at 13; 1st Levine Rpt. at 40.)  Microsoft contends that in REC's infringement

contentions, REC's theory was that the "second multi-module program" limitation was

met by the entirety of assemblies comprising a .NET program, and now, in Dr. Levine's

report, REC contends infringement is found through only a subset of assemblies

comprising a .NET program.  (Mot. at 13-15.)

　　　　REC responds that it did not use the term ".NET program" in its infringement

contentions to mean "the entirety of the assemblies in a .NET program."  (Resp. at 12.)

Instead, according to REC, it used the term "program" in its infringement contentions in

accord with the term's ordinary meaning, as it was defined by the court in its *Markman*

order.[5]  (*Id.* at 13.)  Additionally, REC argues that Microsoft's argument is flawed

because it "depends on the premise that if something is a 'program,' it cannot be

comprised of multiple programs."  (*Id.*)

---

[5] In its *Markman* order, the court defined the term "first program that is executing on a computer" to mean "a set of computer instructions running on a computer that enables the computer to perform a specific operation or operations."  (*Markman* Order at 13.)

ORDER- 12

1    In considering whether a revised theory should be stricken from an expert report,

2    courts examine the nature and scope of the theory disclosed, and then consider whether

3    the challenged sections merely "provide[] an evidentiary example or complementary

4    proof" of a theory already disclosed, or in fact "advance a new or alternate" theory.

5    *Genentech*, 2012 WL 424985, at *2, (N.D. Cal. Feb. 9, 2012).  If the theory contained in

6    the expert report does advance a new or revised theory, the court will then determine if

7    good cause exists to amend.  *Acer, Inc. v. Technology Properties Ltd.*, Nos. 5:08–cv–

8    00877 JF/HRL, 5:08–cv–00882 JF/HRL, 5:08–cv–05398 JF/HRL, 2010 WL 3618687, *3

9    (N.D. Cal. Sept. 10, 2010).

10    Microsoft's argument turns on what was meant or understood by REC's

11    infringement contention regarding the limitation "second multi-module program," and

12    specifically by the phrase ".NET program."  If, by this phrase, REC referred to the

13    entirety of the assemblies in a .NET program, then REC would have indeed changed its

14    theory in Dr. Levine's report by alleging infringement through only a subset of the

15    assemblies in a .NET program.  On the other hand, if REC used the phrase in a general

16    sense, then the ".NET program" of REC's infringement contention could be merely one

17    of several programs within a larger .NET program, and there would be no inconsistency

18    in REC's theory.  Here, the court declines to wade into the murky waters of REC's and

19    Microsoft's he-said-she-said finger-pointing.  The court does not have the ability to

20    determine what was meant by ".NET program" in REC's infringement contentions

21    without the necessary context of the technology at issue, and unfortunately, Microsoft has

22    failed to provide the court with such context.  Indeed, the only evidence the court has

1   before it is the court's claim construction of the word "program," defined as part of a

2   larger term and in the context of interpreting the claims of the Patent-in-Suit.  Thus,

3   Microsoft has not persuaded the court that REC's theory is in fact sufficiently different

4   such that REC would have been required to amend its infringement contentions, and the

5   court denies Microsoft's motion regarding Dr. Levine's theory of infringement of

6   "second multi-module program" limitation.

7          Nevertheless, the court will permit Microsoft to supplement its expert report of

8   invalidity.  Microsoft asserts that it prepared its defenses on its understanding that by

9   ".NET program" REC meant the entirety of assemblies of a .NET program.  The court

10  takes Microsoft at its word, and therefore to alleviate any prejudice Microsoft may have

11  suffered by its reliance, justified or not, on REC's infringement contention, Microsoft

12  may submit a supplement expert report to address the limited issue of REC's theory of

13  infringement for the "second multi-module program" limitation.

14  *//*

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

ORDER- 14

1

### IV.   CONCLUSION

2          Based upon the foregoing, the court GRANTS in part and DENIES in part

3     Microsoft's motion (Dkt. ## 201, 202) to strike portions of REC's 1st Levine Report.

4     The court GRANTS Microsoft's request to serve a supplemental expert report on

5     invalidity limited to addressing REC's theory of infringement for the "second multi-

6     module program" limitation.  Microsoft shall serve any supplemental expert report no

7     later than September 1, 2012.  The court DENIES all other requests in Microsoft's

8     motion.

9          Dated this 16th day of August, 2012.

10

11

12

                                   JAMES L. ROBART
                                   United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER- 15