UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REC SOFTWARE USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> BAMBOO SOLUTIONS CORPORATION, et al., <br><br> Defendants. | CASE NO. C11-0554JLR <br><br> ORDER DENYING MOTION TO COMPEL |

## I.     INTRODUCTION

This matter comes before the court on Defendant Microsoft Corporation's ("Microsoft") motion to compel Plaintiff REC Software USA, Inc.'s ("REC") production of a third version of an "Infringement Analysis Report" on the basis that REC waived the subject matter of the report through disclosures of other otherwise-privileged information to Simon Linnett, an investor in REC, and a non-party to this litigation. (Mot. (Dkt. # 404).) Having considered Microsoft's motion, REC's response (Resp. (Dkt. # 411)),

ORDER- 1

Microsoft's reply (Reply (Dkt. # 413)), all attachments to the briefs, the balance of the record, and the governing law, the court DENIES Microsoft's motion (Dkt. # 404).

## II.   FACTUAL BACKGROUND

This is a patent infringement suit in which REC alleges that Microsoft's .NET Framework infringes U.S. Patent No. 5,854,936 (the "Patent-in-Suit").[1] Near the close of discovery, Microsoft brought to the court's attention that REC had claimed privilege to certain documents which, based on REC's privilege log, had been disclosed to non-parties to the litigation. (Microsoft Discovery Mot. (Dkt. # 155).) During a May 29, 2012 hearing, the court ordered REC to re-evaluate its privilege log and produce additional documents under the rationale that disclosure of documents to non-parties waived privilege under either the attorney-client privilege or the work product doctrine. (5/29/12 Tr. (Dkt. # 195) at 2-5.) Subsequent to the court's May 29, 2012 ruling, REC produced two versions of a report titled "REC Software Infringement Analysis for Microsoft Products," which generally contained a legal analysis of the merits of REC's patent infringement claims against Microsoft as well as possible defenses.[2] (Mot. Ex. 21 ("Rpt. I"); Strand Decl. (Dkt. # 405) Ex. 17 ("Rpt. II").) The first version of the Infringement Analysis ("Report I") was disclosed to Simon Linnett via e-mail (*see* Rpt. I at 2). Microsoft admits, however, that no evidence exists that the second version of the

---

[1] The two other defendants named in REC's complaint have been dismissed from the case.

[2] Hereinafter the "REC Software Infringement Analysis for Microsoft Products" will generally be referred to as the "Infringement Analysis," and each version of the Infringement Analysis will be referenced as Report I, Report II, and Report III, as shown in the body of the order.

ORDER- 2

1  Infringement Analysis ("Report II") was disclosed to Mr. Linnett.[3] (Mot. at 5.) Report I
2  and Report II appear identical, except that Report II contains a section titled "Code
3  Server Conception and Offer for Sale," which provides factual background of conception
4  of the invention and an analysis concerning and the on-sale bar defense under 35 U.S.C. §
5  102(b).[4] (*See* Rpt. II at 126-30.)

6       In addition to Reports I and II, REC produced additional documents, including
7  various communications between Mr. Stephen Pickett (the inventor of the Patent-in-Suit),
8  Mr. Kevin Russell (Mr. Pickett's patent prosecution attorney), and Mr. Linnett. The
9  communications reveal that Mr. Linnett was privy to discussions on a wide range of
10 topics, including (1) the sales and development timeline of Mr. Pickett's product and the
11 on-sale bar validity issue; (2) retention of law firms and expert witnesses; (3) funding of
12 the lawsuit and the fee structure of law firms; (4) the infringement investigation; (5) the
13 infringement analysis; (6) damages; (7) general updates on the patents and possible
14 lawsuit against Microsoft; and (8) general requests to keep Mr. Linnett updated regarding
15 the process of the lawsuit. (*See* Mot. Exs. 7-23 (e-mails including Mr. Linnett discussing
16 aforementioned topics).)

---

[3] Confusingly, although Microsoft admits there is no evidence that Report II was disclosed to Mr. Linnett, the first page of the version of Report II provided by Microsoft to the court is an e-mail to, among others, Mr. Linnett. (*See* Rpt. II at 2.) The privilege log provided to the court, however, does not list Mr. Linnett as a recipient of Report II.

[4] A point of frustration to the court is that Microsoft's motion includes citations to various Bates numbers which purportedly appear on the copy of Report II filed with the court. The copy of Report II filed with the court, however, does not include Bates numbers, at least to the extent that such Bates numbers are legible. (*See generally* Rpt. II.)

After receiving Report II in production, Microsoft sought to extend discovery in this matter so that it could conduct discovery regarding a possible on-sale bar and public use defenses under 35 U.S.C. § 102(b). (9/4/12 Microsoft Ltr. (Dkt. # 341).) Because Report II included an on-sale bar analysis, the court struck the trial date and permitted limited discovery and motion practice on the defenses of on-sale bar and public use.[5] (9/12/12 Entry (Dkt. # 382).)

Apparently during the above-described discovery, Microsoft became aware of a third version of the Infringement Analysis ("Report III"). Report III is identical to Report II (and includes the section concerning the conception and sale of the invention) except that it also includes an entirely new section (the "Disputed Analysis") on a subject not addressed in earlier versions. Pages 1 through 130 of Report III are identical to Report II (and Report I, except that Report III also includes the section on conception and sale), and the Disputed Analysis begins on page 131 and ends on page 158. According to REC and its privilege log, Report III was prepared by REC attorney Kevin Russell and was only distributed to two individuals outside of REC—REC's litigation counsel at Dovel & Luner LLP, Rick Lyon and Greg Dovel. (*See* REC Privilege Log, Entry No. 310.) REC produced a version of Report III to Microsoft, redacting the Disputed Analysis, so that Microsoft could verify the duplication between Reports I and II and Report III. (Resp. at 3.)

---

[5] The parties are now operating under a new schedule with a trial date of October 7, 2013. (*See* 11/9/12 docket entry.)

ORDER- 4

It is Report III, including the Disputed Analysis, that Microsoft seeks to discover by way of its present motion.  The parties have asked the court to conduct an *in camera* review of Report III to determine whether it must be produced.

### III.   LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  The Rule goes on to state that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  The scope of permissible discovery under Rule 26 should be liberally construed; the rule contemplates discovery into any matter that bears on or reasonably could lead to other matter that could bear on any issue that is or may be raised in a case.  *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 621 (N.D. Cal. 2006).  However, the broad scope of permissible discovery is limited by any relevant privileges, including the attorney-client privilege.  *See* Fed. R. Civ. P. 26(b)(1).  Any proposed privilege must promote a public interest that is "sufficiently important . . . to outweigh the need for probative evidence." *Trammel v. United States*, 445 U.S. 40, 51 (1980).  The recognition of a privilege should be judged on a case-by-case basis and weighed against the public interest.  *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996).

The scope of discovery is also constrained by Rule 26(c), which explicitly authorizes the district court to protect parties from "undue burden or expense" in

discovery by ordering "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Fed. R. Civ. P. 26(c)(7). To obtain a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance. Fed. R. Civ. P. 26(c). The burden of demonstrating the need for protection from discovery is placed on the party seeking a protective order, not on the party opposing the order. *Id.*

## IV. DISCUSSION

Here, the parties do not appear to dispute that the work product doctrine attaches to Report III.[6] (*See* Resp. at 4 ("Microsoft does not dispute that, absent disclosure to third parties (including Simon Linnett), all versions of the Infringement Report would be privileged work product."); Reply at 1 ("The ultimate question for the Court is whether that report falls within the scope of the waiver via disclosure to Mr. Linnett.").) Indeed, Report III is quintessential work product material in that it is an analysis by the plaintiff of its claims and the defenses against it, which from the face of the document appears to have been prepared in anticipation of litigation. *See In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989) (holding that to qualify for work product protection, documents must have two characteristics: "(1) they must be prepared in anticipation of

---

[6] REC does not contend that any other privilege, such as the attorney-client privilege, attaches to Report III to protect its disclosure. Based on the privilege log, Report III was never disclosed to the client, Mr. Pickett, and therefore, the attorney-client privilege would not apply. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (describing the attorney-client privilege as one that protects confidential communications between attorney and client for the purpose of ensuring effective legal advice). Thus, the court need only examine Report III for privilege or waiver under the work product doctrine.

litigation or for trial, and (2) they must be prepared by or for another party [to the litigation] or by or for that other party's representative"). Moreover, there is no dispute that REC waived any privilege to Reports I and II by disclosing those reports to Mr. Linnett and/or Microsoft.[7] *See Pecover v. Elec. Arts Inc.*, No. 08-2820, 2011 WL 6020412, at *1 (N.D. Cal. Dec. 2, 2011) (stating that a party may waive work product protection where it discloses otherwise protected documents to a third party and thereby enables an adversary to gain access to the information).

Instead, Microsoft contends that REC waived work product protection with respect to Report III by disclosing the subject matter of the report to Mr. Linnett through other communications. Microsoft argues that REC's communications with Mr. Linnett constitute subject matter waiver as to infringement, validity, and damages, and all related documents. (Mot. at 1-2.) Accordingly, Microsoft asks the court to examine Report III *in camera* to determine whether the subject matter of the Disputed Analysis has been waived. (*Id.* at 2.)

A finding of subject matter waiver would entitle Microsoft to discovery of all documents and communications on the same subject matter. *Klein v. Demopulos*, 2010 WL 4365840, at *2 (W.D. Wash. Oct. 27, 2010). The subject matter waiver doctrine

---

[7] Although REC asserts that it did not disclose Report II to Mr. Linnett, it admits that it mistakenly produced Report II to Microsoft. (Lyon Decl. (Dkt. # 412) ¶ 2.) Further, after Microsoft filed Report II under seal as an exhibit to a motion (Dkt. # 273), REC did not respond to the motion to seal and provide good cause as to why Report II should remain under seal. (*See generally* Dkt.) Accordingly, the seal on Report II was lifted, and Report II has been publicly available for over four months. (*See* 8/20/12 Order (Dkt. # 301) (lifting seal on Report II).) REC does not dispute that it has waived privilege with respect to Report II. (Resp. at 3.)

ORDER- 7

finds its origins in fairness and "prevents a party from disclosing communications that support its position while simultaneously concealing communications that do not. *Lambright v. Ryan*, 698 F.3d 808, 823 (9th Cir. 2012); *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D 568, 576 (N.D. Cal. 2008). "[T]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures" (internal citations and quotations omitted). *S.E.C. v. Roberts*, 254 F.R.D. 371, 378 (N.D. Cal. 2008). The scope of the waiver, however, must be narrowly tailored to cover only the precise subject matter of the waived disclosure, considering fairness in light of the underlying purpose of the work product doctrine. *Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, 2012 WL 3062294, at * 8 (N.D. Cal. July 26, 2012); *see also Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1373 (Fed. Cir. 2012) (analyzing Ninth Circuit law in holding that courts must use "fairness balancing" approach when determining scope of pre-litigation privilege waiver). Under this approach, the Court finds no subject matter waiver here.

      The work product doctrine, first articulated in *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), and codified in Federal Rule of Civil Procedure 26(b) (3), is "a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989). Work product protection seeks to "promote the adversary system by safeguarding the fruits of an attorney's trial

preparations from the discovery attempts of the opponent." *See United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980); *see also* Fed. R. Civ. P. 26(b)(3). In order for an attorney to properly prepare his client's case, he or she must be able to "assemble information, sift what he considers to be the relevant from irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 511. In short, the work product doctrine protects the integrity of the adversary system. *Am. Tel. and Tel. Co.*, 642 F.2d at 1299.

Based on the court's *in camera* review of Report III, the Disputed Analysis contained therein is the work product of Kevin Russell analyzing the merits of REC's patent infringement claims prior to the onset of litigation. Attorneys' mental impressions, conclusions, opinions, and legal theories are most commonly referred to as "opinion" work product (as opposed to "ordinary" work product) and are afforded the utmost protection. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1991) (requiring a "compelling need" to discover opinion work product, but not extending absolute protection); *cf. In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977) ("[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances").

Moreover, pure opinion work product is not likely to be used as evidence at trial. *See Am. Tel. and Tel. Co.*, 642 F.2d at 1301; *Martin Marietta Corp. v. Pollard*, 856 F.2d 619, 626 (4th Cir.1988). Instead, as explained in *Resilient Floor Covering*:

> [O]pinion work product merely offers insight into opposing counsel's strategy, arguments, and mental processes—information the discovering party normally has no right to. Once a party discloses opinion work

1       product, the information cannot be erased from opposing counsel's mind
      (the "bell cannot be unrung"). For this reason there is rarely a fairness
2       justification mandating further insight into attorney opinions.

3 2012 WL 3062294, at *7. Accordingly, unless a party affirmatively places attorney

4 opinions at issue (referred to as "issue injection") or engages in selective disclosure,

5 disclosure of additional opinion work product is likely not justified. *See The Navajo*

6 *Nation v. Peabody Holding Co., Inc.*, 255 F.R.D. 37, 48-50 (D.D.C. 2009). Thus, absent

7 issue injection and/or selective disclosure, courts limit waiver of work product protection

8 to maintain the adversary system. *See id.*; *see also Martin Marietta*, 856 F.2d at 626

9 ("[T]he protection of lawyers from the broad repercussions of subject matter waiver in

10 [the context of pure opinion work product] *strengthens* the adversary process, and, unlike

11 the selective disclosure of evidence, may ultimately and ideally further the search for the

12 truth." (emphasis added)).

13       Under the legal rubric set forth, the court finds no subject matter waiver here. As

14 an initial matter, upon review of the Disputed Analysis of Report III, the court finds that

15 REC has not disclosed the precise subject matter of the Disputed Analysis to Mr. Linnett.

16 Microsoft contends that because REC has disclosed such a wide scope of information to

17 Mr. Linnett, it "seems highly unlikely that the contents of the [Disputed Analysis] were

18 not in some way presented to Mr. Linnett in another communication." (Reply at 1-2.)

19 Microsoft therefore urges a broad scope of subject matter waiver, but the Ninth Circuit's

20 waiver doctrine is narrow and only covers the precise subject matter of the disclosure for

21 which the court found privilege to have been waived. Thus, each of REC's disclosures

22

ORDER- 10

must be carefully examined for the *precise* subject matter disclosed, and none of the disclosures provided by Microsoft overlap with the content of the Disputed Analysis.

Moreover, even if Microsoft were correct that REC had disclosed the precise subject matter to Mr. Linnett (or another non-party) or had waived privilege so broadly through its disclosures as to encompass virtually all aspects of the litigation, no fairness justification exists for finding that the work product privilege attached to the Disputed Analysis has also been waived. At a general level, the Disputed Analysis contains Mr. Russell's assessment of REC's patent infringement case against Microsoft on a specific topic, including a factual account and legal analysis. Microsoft has not explained why, in fairness, disclosure of the Disputed Analysis is warranted. Microsoft does not contend that REC has affirmatively placed the attorney opinions contained in the Disputed Analysis at issue in this case nor does Microsoft allege that REC has engaged in selective disclosure of protected documents to gain advantage. Indeed, Microsoft could not allege the latter, because pursuant to the court's May 29, 2012 discovery order, REC has produced all documents disclosed to non-parties without regard to whether such documents support REC's claims in this litigation.[8]

Microsoft only contends that because REC waived its privilege with respect to Reports I and II, in "fairness" REC should disclose Report III (containing the Disputed Analysis). Disclosure of Report III under such rationale would defeat the purpose of the

---

[8] Microsoft makes no allegations that REC has failed to comply with the court's order that REC produce all documents sought in discovery disclosed to non-parties (thereby waiving any privilege that may have attached to those documents at one time).

ORDER- 11

work product doctrine and run afoul of the court's duty to narrowly tailor any subject matter waiver. The parties do not contend that the Disputed Analysis was created after Reports I and II, and as REC correctly explains, simply because Mr. Russell chose to add the Disputed Analysis to an already-existing document does not provide grounds for waiver. (Resp. at 6.) Under Microsoft's theory of subject matter waiver, if REC disclosed opinion work product on a precise subject to a non-party (thereby waiving any privilege), REC's counsel could no longer write down any mental impressions, conclusions, opinions, or legal theories on the same subject for the remainder of the case and expect such work product to be protected. In other words, disclosure of work product on a precise subject matter pre-litigation or at an early stage of the case would be fatal to any work product of the attorney on that same subject matter in the future. The court does not believe such a result comports in any way with the purpose behind the work product doctrine of strengthening the adversary process. Thus, the court declines to extend subject matter waiver to cover the Disputed Analysis contained in Report III.

## V.  CONCLUSION

For the foregoing reasons, the court DENIES Microsoft's motion (Dkt. # 404) to compel production of the Disputed Analysis contained in Report III. The court notes that the parties in this case have been engaged in a prolonged discovery dispute seemingly centered on the content contained in the various versions of the Infringement Analysis. The court is hopeful that this order may put to rest the parties disagreement over any Infringement Analysis. As future discovery disputes arise, however, the court encourages the parties to utilize Western District of Washington Local Civil Rule 7(i). Local Civil

1  Rule 7(i) may serve to provide more expedient and cost effective resolutions to discovery
2  disputes than motion practice.
3       Dated this 30th day of January, 2013.

                                    JAMES L. ROBART
                                    United States District Judge

ORDER- 13