The Honorable James L. Robart

1

2

3

4

5

6

7  **UNITED STATES DISTRICT COURT**
   **WESTERN DISTRICT OF WASHINGTON**
8  **AT SEATTLE**

9

10  REC Software USA, Inc.,

11          Plaintiff,                         CASE NO. C11-554-JLR

12  vs.                                        **REC's motion for summary judgment
                                               that Microsoft has no invalidity defense**
13  Bamboo Solutions Corporation; Microsoft    **under 35 U.S.C. § 102(b)**
    Corporation; SAP America, Inc.; and SAP
14  AG,                                        NOTE ON MOTION CALENDAR:
                                               FRIDAY, AUGUST 23, 2013
15          Defendants.

16

17

18

19

20

21

22

23

24  REC's MSJ re Microsoft's § 102(b) Defenses    **DOVEL & LUNER LLP**
    Case No. C11-554-JLR                           201 Santa Monica Blvd., Suite 600
25                                                  Santa Monica, CA  90401
                                                    (310) 656-7066

1

### Table of Contents

I.    Introduction...........................................................................................................1

II.   The summary judgment standard.......................................................................1

III.  Microsoft's § 102(b) "public use" defense cannot survive summary judgment..............2

    A.  <u>Reason 1</u>:  The unrefuted evidence shows that Mr. Nicholson did not use the claimed invention in the United States prior to August 22, 1990..........................................3

    A.  <u>Reason 2</u>:  The unrefuted evidence shows that Mr. Nicholson's activities relating to PBS were not public. ........................5

IV.   Microsoft's § 102(b) "on sale" defense cannot survive summary judgment.....................9

    A.  The "sale or offer for sale" identified by Microsoft did not occur "in this country." .................................................10

    B.  Microsoft's "activity prefatory to a sale" theory of §102(b) on-sale prior art fails. .................................................11

        1.  The relevant case law confirms that the "offer for sale" to Microsoft did not occur "in this country."...................................12

        2.  Microsoft offers no evidence that the PBS system was "on sale" in the United States .................................................14

            A.  REC's general "U.S. presence" is not evidence that the PBS system was "on sale" in the United States. ...................................14

            B.  Mark Nicholson's activities are not evidence that the PBS system was "on sale" in the United States. ...................................15

            C.  The fax to Jean Buet is not evidence that the PBS system was "on sale" in the United States. ...................................18

            D.  REC's own legal analysis of § 102(b) is not evidence that the PBS system was "on sale" in the United States. .....................20

            E.  The Canadian tax document is not evidence that the PBS system was "on sale" in the United States. ...................................20

V.    Conclusion. .........................................................................................................22

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

1 <u>**Table of Authorities**</u>

2 **Cases**

3 *3M v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002)........................................................................ passim

*Abaxis, Inc. v. Cepheid*,
4   2012 U.S. Dist. LEXIS 111609 (N.D. Cal. 2012) ................................. 13, 16

5 *Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*,
   2004 U.S. App. LEXIS 16649 (Fed. Cir. 2004) ...................................... 8

6 *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*,
   825 F. Supp. 65 (D. Del. 1993)........................................... 13, 14, 16, 17

7 *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*,
   386 F.3d 1371 (Fed. Cir. 2004)............................................... 3, 6, 8

8 *Celotex Corp. v. Catrett*,
   477 U.S. 317 (U.S. 1986)........................................................... 1

9 *Aguayo v. Universal Instruments Corp.*,
   356 F. Supp. 2d 699 (S.D. Tex. 2005) ................................... 16, 17

10 *Dey, L.P. v. Sunovion Pharms., Inc.*,
   715 F.3d 1351 (Fed. Cir., May 20 2013) ............................. 6, 7, 8

11 *Gemstar-TV Guide Int'l, Inc. v. ITC*,
   383 F.3d 1352 (Fed. Cir. 2004)........................................... 6

12 *Group One, Ltd. v. Hallmark Cards*, Inc.,
   254 F.3d 1041 (Fed. Cir. 2001)..................................... 13, 20

13 *Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005)....................................... 1

14 *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*,
   322 F.3d 1335 (Fed. Cir. 2003).................................... 13

15 *Moleculon Research Corp. v. CBS, Inc.*,
   793 F.2d 1261 (Fed. Cir. 1986)................................... 7

16 *MOSAID Techs. Inc. v. Samsung Elecs. Co.*,
   362 F. Supp. 2d 526 (D.N.J. 2005) ................................ 10

17 *Netscape Communs. Corp. v. Konrad*,
   295 F.3d 1315 (Fed. Cir. 2002)................................... 6

18 *Robbins Co. v. Lawrence Mfg. Co.*,
   482 F.2d 426 (9th Cir. 1973) ........................... 10, 12, 15

19 *Synair Corp. v. American Industrial Tire, Inc.*,
   223 USPQ 1021 (S.D. Tex. 1983) .......................... 13, 14

20 *Titan Tire Corp. v. Case New Holland, Inc.*,
   2009 U.S. App. LEXIS 11763 (Fed. Cir. June 3, 2009) ............ 1

21 *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors, USA, Inc.*,
   617 F.3d 1296 (Fed. Cir. 2010)....................................... 11

22 **Statutes**

23 35 U.S.C. § 102(b) ................................................................ passim

24

25

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- ii

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

## I.     Introduction.

Microsoft asserts that claims 1 and 8 of REC's U.S. Patent No. 5,854,936 (the "'936 patent") are invalid under 35 U.S.C. Section 102(b) on the grounds that the claimed invention was (1) in "public use" and (2) "on sale" "in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).    In this motion, REC seeks an order establishing that Microsoft failed to raise a genuine issue of material fact and is barred from presenting at trial any contention that the asserted claims of the '936 patent are invalid under 35 U.S.C. Section 102(b).[1]

## II.     The summary judgment standard.

"A patent is presumed valid."  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005).  "Because of this presumption, an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation."  *Titan Tire Corp. v. Case New Holland, Inc*., 2009 U.S. App. LEXIS 11763 (Fed. Cir. June 3, 2009).

Since Microsoft bears the burden of establishing invalidity, REC need not affirmatively show in its motion for summary judgment that Microsoft's defenses are without merit. Instead, REC need only "point[] out to the district court – that there is an absence of evidence to support [Microsoft's] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (U.S. 1986).

---

[1]     The controlling statute provides four separate invalidity grounds: "A person shall be entitled to a patent unless … the invention was [1] patented or [2] described in a printed publication in this or a foreign country or [3] in public use or [4] on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. §102(b).  Microsoft only asserts the "public use" and "on sale" defenses.   Microsoft does not assert the "patented" or "printed publication" defenses.

**III.    Microsoft's Section 102(b) "public use" defense cannot survive summary judgment.**

Under 35 U.S.C. Section 102(b), a patent is invalid if "[t]he invention was … in public use … in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).  The date of the application for the '936 patent was August 22, 1991.  Accordingly, to survive summary judgment, Microsoft must offer evidence that the claimed invention was in "public use" in the United States prior to August 22, 1990.

The only contention of §102(b) "public use" that Microsoft has identified is the following:

> [REC contractor, Mark] Nicholson, while located in the United States, assisted [REC inventor Stephen] Pickett in developing code server technology before the critical date of August 22, 1990.

Lyon Decl., Ex. 1 (Microsoft's supplemental responses to REC's contention interrogatories on Microsoft's § 102(b) "public use" and "on sale" defenses) (referred to throughout this brief as "Contentions") at 14.

Accordingly, Microsoft must offer evidence that within the United States, prior to August 22, 1990:

(1) Mr. Nicholson actually "use[d]" the claimed invention, *see* 35 U.S.C. § 102(b) ("The invention was … in public <u>use</u>");[2] and

(2) Mr. Nicholson's use of the claimed invention was "public," *see id*. ("The invention was … in <u>public</u> use.")

The unrefuted evidence shows the opposite.  Mr. Nicholson (1) never used the claimed invention in the United States prior to August 22, 1990, and (2) none of his assistance to Mr. Pickett was public.  Because Microsoft has <u>zero</u> evidence in support of either (1) or (2), let alone evidence that could lead a reasonable jury to conclude that it has met its clear and convincing

---

[2]     Unless otherwise noted, any emphases appearing within quotations in this brief were added for purposes of this brief and do not appear in the original source.

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

burden, summary judgment must be granted for two independent reasons.

**A.** <u>**Reason 1**</u>**:  The unrefuted evidence shows that Mr. Nicholson did not use the claimed invention in the United States prior to August 22, 1990.**

Unless Microsoft can identify (a) an actual embodiment of the claimed invention and (b) evidence that Mr. Nicholson "used" the embodiment in the United States prior to August 22, 1990, then its "public use" defense cannot survive summary judgment.  *See 3M v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) (reversing denial of JMOL that there was no § 102(b) anticipation because "there is not substantial evidence of use of the Ricoseal product [that embodied the claimed invention]; there is no direct evidence of its use. Therefore, there is not substantial evidence to overcome the presumption of validity and support a jury finding of use.").  Accordingly, we must ask (a) is there a product that embodies the claimed invention?  And (b) is there evidence that this product was used in the United States prior to the critical date?

(a) Microsoft contends that the claimed invention was embodied in the software, or source code, comprising REC's PBS System.  *See* Contentions at 14 ("Mr. Pickett develop[ed] "PBS" before the critical date"); Lyon Decl., Ex. 7 (Microsoft Expert Report) at ¶¶ 186, 187 (opining that "REC's PBS System anticipates Claims 1 and 8" based on "PBS System Documentation and source code").  Although REC disputes this contention,[3] resolution of this issue is not necessary to grant REC's motion, and, accordingly, REC does not address the issue in this brief.  We therefore turn to (b).

(b)  Is there evidence that REC's PBS System was used in the United States prior to the

---

[3]   Microsoft bears the burden of demonstrating that REC's PBS System meets, or renders obvious, all of the elements of the asserted '936 patent claims.  *See Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1377, 1376 (Fed. Cir. 2004) ("[A] determination of whether a patent is invalid for prior public use under § 102(b) requires comparison of the patent claims to the alleged public use," and it is Defendant's "clear and convincing evidentiary burden.")

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 3

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

1   critical date?  No, there is none.  Microsoft cannot point to any evidence that Mr. Nicholson (or

2   anyone else) used the PBS System in the United States during this timeframe.  In fact, there is no

3   evidence that Mr. Nicholson (or anyone else) ever had a copy of the PBS System software within

4   the United States during the relevant timeframe.

5          The actual PBS System – *i.e.*, the software that Microsoft contends embodies the claimed

6   invention – was developed and maintained by '936 inventor and REC President Stephen Pickett

7   from his home office in Vancouver, Canada.  Lyon Decl., Ex. 2 at 578:11-20.  The PBS System

8   was intended to run underlying programs in a more efficient way.  Lyon Decl., Ex. 2 at 17:17-

9   18:10; 531:16-21.  One of these programs was General, the primary software program of Credit

10  du Nord, one of Mr. Pickett's long-time clients.  *Id*. at 18:11-25.  Because Mark Nicholson, who

11  was formerly employed by Credit du Nord in Paris but now resided in Lincoln City, Oregon, was

12  intimately familiar with Credit du Nord's General program, Mr. Pickett hired Mr. Nicholson as a

13  contractor to help him develop his PBS System to run General.  Lyon Decl., Ex. 3 at 9:2-14,

14  20:13-21:2, 23:20-24:2; *id*., Ex. 1 at 9.  In particular, one of Mr. Nicholson's primary roles was

15  to determine how the various modules of General linked to one another, so that Mr. Pickett could

16  use this information in developing the PBS System to run the General.  Lyon Decl., Ex. 3 at

17  69:12-21; Ex. 2 at 665:13-666:3.  To accomplish this task, it was unnecessary for Mr. Nicholson

18  to have the actual PBS System software in his home office in Oregon.  And the evidence shows

19  that <u>Mr. Nicholson did not have a copy of the PBS Software in Oregon</u> during this time.   Lyon

20  Decl., Ex. 3 at 70:7-14, 69:12-21.  Mr. Nicholson and Mr. Pickett explained at deposition:

21          Q.  So <u>you were never sent any PBS source code or software</u>?  A.  <u>I don't remember that</u>.
22          Q.  You never -- you're saying you never worked with it?  You never saw it?  A.  I didn't
        -- I didn't -- <u>my equipment in Lincoln City was not running PBS.  It was running a</u>
23          <u>skeleton in the Crédit du Nord software</u>.

24

25

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 4

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

Lyon Decl., Ex. 3 (Nicholson depo) at 70:7-14.[4]

> Q.  Do you recall working on source code for Mr. Pickett during June of 1990?
>
> A.  <u>Any work that I did, any source code that I worked on was -- in the summer during that period was analyzing existing Crédit du Nord software</u> on how it worked to know where compatibility issues would be; in other words, utilities to perform that work, <u>not PBS source code</u>; so just to make distinction.

*Id*. at 69:12-21.

> Q.  So <u>was he writing code for REC</u>?   A.   Not code -- <u>not code that was part of the Code Server</u> or the client.  Q.  So what was the code that he was working on?  A. … It's a simple application for determining the references between modules in a given program. And that's essentially what he was writing, <u>was he was writing and testing out which modules needed to be called during the course of associating the Credit du Nord program.</u>

Lyon Decl., Ex. 2 (Pickett depo) at 665:13-666:3.

Because there is no evidence that the PBS System – *i.e.*, what Microsoft contends was the embodiment of the claimed invention – ever even entered the United States prior to the critical date, there can be "use" of the claimed invention under § 102(b).  The Court need not proceed any further to grant summary judgment of no §102(b) "public use."

**B.    Reason 2:  The unrefuted evidence shows that Mr. Nicholson's activities relating to PBS were not "public."**

If the facts of this case were different, and there were evidence that Mr. Nicholson was in possession of, and used, the PBS System in the United States prior to August 22, 1990, Microsoft's § 102(b) "public use" defense still could not survive summary judgment.  Mere "use" of an invention in the United States prior to the critical date cannot support a § 102(b) public use defense.

"For prior art to anticipate because it has been 'used,' <u>the use must be accessible to the public</u>."  *3M*, 303 F.3d at 1301.  "[W]hat it means to be 'accessible to the public'" is informed by the policy "underlying the public use bar" – *i.e.*, "discouraging the removal, from the public

---

[4]    Attorney objections have been omitted for deposition excerpts reproduced in this brief.

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 5

domain, of inventions that the public reasonably has come to believe are freely available." *Dey, L.P. v. Sunovion Pharms., Inc*., 715 F.3d 1351, 1355 (Fed. Cir., May 20 2013).

The Federal Circuit has "set forth factors that may be helpful in analyzing the question of public use, including '[1] the nature of the activity that occurred in public; [2] the public access to and knowledge of the public use; [and] [3] whether there was any confidentiality obligation imposed on persons who observed the use.'" *Dey,* 715 F.3d at 1355 (quoting *Bernhardt,* 386 F.3d at 1379.

Each of these factors demonstrates that any activities related to the PBS System in the United States during the relevant timeframe were <u>not</u> public.  We address each factor in turn.

(1) <u>**"the nature of the activity that occurred in public**</u>" – At one end of the spectrum (*i.e*., the public end) is an open demonstration of the patented invention to the public.  For example, if the facts show that Mr. Pickett or Mr. Nicholson had freely demonstrated, and distributed copies of, the PBS System at a well-attended open seminar (with no understanding of confidentiality in place), then the "public [could] reasonably … come to believe [the inventions] are freely available."  *Dey*, 715 F.3d at 1355.

At the opposite end of the spectrum (*i.e*., the non-public end) is development work, where the activity was performed by an employee or contractor hired to assist in perfecting the patented product.  *See Netscape Communs. Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002) ("The use of an invention by the inventor himself, <u>or of any other person under his direction</u>, by way of experiment, and <u>in order to bring the invention to perfection</u>, <u>has never been regarded as such a use</u>."); *Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1381 (Fed. Cir. 2004) ("An inventor may solicit the assistance of others when perfecting the invention without 'losing' any patent rights.").

REC did not publicly demonstrate or distribute its PBS System in the United States.

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 6

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

Rather, the only U.S. activity relating to the PBS System was the assistance provided by Mr. Nicholson, who was hired by inventor, Stephen Pickett, to help bring his PBS System to perfection. *See, e.g.*, Lyon Decl. Ex. 1 at 9 ("REC … hired a U.S.-based programmer, Mr. Mark Nicholson, to assist in the development of the "PBS" system"). Accordingly, Mr. Nicholson's activity falls on the far end of the non-public end of the spectrum, and cannot be a "public" use.

   **(2) "the public access to and knowledge of the public use"** – If there was open and widespread public access to, and knowledge of, the claimed invention, then that would favor application of the public use bar. On the other hand, if the invention is only used in a "controlled" environment where there is "a legitimate expectation of privacy and confidentiality," like an "office" or "home," then the public use bar is inapplicable. *See Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1265-66 (Fed. Cir. 1986) (affirming finding of no public use where inventor Nichols allowed a "few close colleagues" to use the patented invention in his office because "the exposure … in Nichols' office [is] no different than the exposure of Nichols' close friends in his home," where there is a "legitimate expectation of privacy and of confidentiality.").

   Here, the undisputed facts show that any materials relating to the PBS System within the United States were in the controlled environment of Mr. Nicholson's home office:

   Q. During your time in Oregon City when you worked with Mr. Pickett, <u>you worked from home</u>; right? A. <u>Yes</u>. Q. <u>Did you ever take your work outside of your home</u>? A. <u>No</u>. Q. <u>Or in the public</u>? A. <u>No</u>.

Lyon Decl., Ex. 3 (Nicholson depo) at 83:11-21. Accordingly, this factor also demonstrates that any U.S. activity relating to the PBS System was not public.

   **(3) "whether there was any confidentiality obligation"** – "[C]onfidential … uses do not invalidate later-filed patents." *Dey,* 715 F.3d at 1355. As one would expect for a contractor hired to help an inventor perfect his product, Mr. Nicholson's activities on the PBS System were

confidential:

> Q.  Mr. Nicholson, at all times during your work with Mr. Pickett or REC, <u>was your work confidential</u> and subject to nondisclosure?  A.  <u>Yes, it was always confidential</u>.

Lyon Decl., Ex. 3 (Nicholson depo) at 83:2-10.  Accordingly, because the unrefuted evidence shows that Mr. Nicholson's activities were confidential, they cannot be a public use.

Microsoft contends that "REC has presented no evidence of a non-disclosure agreement between REC and Mr. Nicholson or his company."  Contentions at 14.  This contention misstates the factual record and the law.

*First*, Mr. Nicholson's testimony that his work was confidential is evidence that he could not disclose information about his work for REC.  Indeed, his testimony is *unrefuted* evidence on this point.

*Second*, the Federal Circuit has "never required a formal confidentiality agreement to show non-public use.… [I]n the absence of such an agreement, we simply ask whether there were circumstances creating a similar expectation of secrecy."  *Dey,* 715 F.3d at 1357 (internal quotations and citations omitted); s*ee also Bernhardt,* 386 F.3d at 1381 ("While it is clear that Pre-Market attendees were not required to sign confidentiality agreements, …in the circumstances of this case, confidentiality agreements were unnecessary, [because, according to the testimony of a Bernhardt employee] 'it's pretty well understood that confidentiality applies to premarket.")  *Aspex Eyewear, Inc. v. Concepts in Optics, Inc*., 2004 U.S. App. LEXIS 16649, *15-16 (Fed. Cir. 2004) ("The mere fact that there was no evidence of a written confidentiality agreement … does not necessarily mean that these disclosures were not confidential.  Madison testified that when she discussed her invention with others there was an understanding that her designs would be kept confidential. … [Materials] disclosed in confidence, are not relevant to the invalidity analysis.") (unpublished case).

Here, Mr. Nicholson explained that, although he could not recall whether there was a

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 8

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

formal written agreement, there was "an understanding that [his work] was confidential," and it was his "standard practice" for such work to remain confidential.  Lyon Decl., Ex. 3 (Nicholson depo at 84:11-24).  Accordingly, the circumstances of his work for REC created an expectation of confidentiality.  And his activities therefore cannot be a public use.

Because the undisputed facts considered under each of the three factors compel a finding that Mr. Nicholson's activities were not "public," Microsoft's §102(b) public use defense cannot survive summary judgment.

*   *   *

In sum, Microsoft has no evidence demonstrating that, prior to the critical date and within the United States, (1) the claimed invention was ever in "use," or (2) any activities relating to the claimed invention were "public."  Both (1) and (2) are independent reasons why the Court must grant summary judgment of no § 102(b) public use defense.

## IV.     Microsoft's Section 102(b) "on sale" defense cannot survive summary judgment.

Under 35 U.S.C. Section 102(b), a patent is invalid if "[t]he invention was … on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. §102(b).

"In order to invalidate a patent under the on-sale bar of 35 U.S.C. § 102(b), an accused infringer must demonstrate by clear and convincing evidence that there was [1] a definite sale or offer to sell more than one year before the application for the patent …, [2] that the product sold or offered for sale anticipated the claimed invention or rendered it obvious," and [3] that the "sale or offer to sell" was "in this country."  *3M*, 303 F.3d at 1301.

Although Microsoft cannot meet its burden for any of requirements (1), (2), or (3), REC limits this summary judgment motion to requirement (3) – "in this country."  Microsoft has not

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 9

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

identified evidence of a "sale or offer for sale" that was "in this country."

### A. The "sale or offer for sale" identified by Microsoft did not occur "in this country."

The only § 102(b) "sale or offer to sell" that Microsoft has identified is a July 11, 1989 development agreement between REC and Credit du Nord, where REC agreed to develop a prototype of the PBS software system:

> In July 1989, Mr. Pickett entered a contract with CDN for the development and demonstration of a new software system called "PBS" [the "Development Agreement"]. … Mr. Pickett testified that he intended to fulfill that contract using his "code server" idea that was the basis of U.S. Patent No. 5,854,936 ("the '936 patent").

Contentions at 8-9; Ex. 4 (July 11, 1989 Development Agreement).

Because the "sale or offer to sell" must be "in this country" to qualify as § 102(b) "on sale" prior art, *3M*, 303 F.3d 1at 1301, to survive summary judgment, Microsoft must present evidence that could lead a reasonable jury to conclude that the Development Agreement constitutes a "sale or offer for sale" "in this country."  *See, e.g., MOSAID Techs. Inc. v. Samsung Elecs. Co*., 362 F. Supp. 2d 526 (D.N.J. 2005) (granting plaintiff's summary judgment motion when the evidence showed that a transaction "was not an offer for sale made in this country" and therefore "not prior art under 35 U.S.C. § 102(b)").

The undisputed facts demonstrate that the Development Agreement was not a "sale or offer for sale" in this country.  Regardless of whether the focus is on (a) the location of the "offer" or (b) the location of the "future sale that would occur pursuant to the offer,"[5] nothing

---

[5]    The "Federal Circuit has not directly addressed what it means for 'an offer for sale' to be 'in this country.'"  *MOSAID*, 362 F. Supp. 2d at 526.  That is, they have not held whether (a) the "offer" must occur in the United States, or (b) the sale contemplated by the offer must occur in the United States.  Microsoft has taken the position that "only the offer, not the actual sale, need occur in the United States."  Dkt #315 at 1 (relying on a Ninth Circuit case, *Robbins Co. v. Lawrence Mfg. Co*., 482 F.2d 426, 434 (9th Cir. 1973) (discussed *infra*).  In another context that may inform how the Federal Circuit would rule – *i.e.*, interpreting the similar language "whoever . . . offers to sell . . . within the United States any patented invention . . . infringes" under 35 U.S.C. § 271(a)) – the Federal Circuit held, "The focus should not be on

---

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 10

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

about (a) the offer (*i.e.*, the proposal in the Development Agreement to develop a PBS prototype), or (b) the subsequent sale contemplated by the Development Agreement (*i.e.*, payment and delivery of the PBS prototype) was "in this country."  The following facts are not in dispute:

- The proposal was sent from (and signed by) REC, a Canadian company, *see* Lyon Decl., Ex. 4 at 1 ("6609 Raleigh Street Vancouver BC");

- The proposal was received (and signed by) Credit du Nord, a French company, *see id.* ("Credit du Nord, D.O.I., 54 Blvd Haussmann, Paris France");

- The product being developed under the terms of the proposal was a "prototype version [to be demonstrated] to Credit du Nord in either Vancouver or Paris" in April 1990,  *id*;

- The prototype was subsequently demonstrated in April 1990 in Paris, France, Lyon Decl. Ex. 2 at 530:21-25; and

- The prototype was an early form of a product (the PBS System) for Credit du Nord that "never made it outside the Paris office."  Lyon Decl., Ex. 2 at 626:9-20.

Accordingly, under the plain terms of the controlling statute, the Development Agreement related to a prototype that was "on sale" in Canada or "on sale" in France, but certainly not "on sale" in the United States, as required by the statute.  Under these facts, Microsoft cannot survive summary judgment.

**B.**   **Microsoft's "activity prefatory to a sale" theory of § 102(b) "on-sale" invalidity fails.**

Confronted with a transaction for a product that can only be considered "on sale" outside this country, Microsoft's only recourse is to (a) marshal all of the facts relating to *any* REC

the location of the offer, but rather the location of the future sale that would occur pursuant to the offer." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors, USA, Inc*., 617 F.3d 1296, 1309 (Fed. Cir. 2010).  As demonstrated in this brief, under either approach, Microsoft lacks evidence to survive summary judgment.

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

1  activity within the United States, even though these facts are wholly unrelated to the question of

2  where the PBS System was "on sale," and (b) misconstrue the case law to suggest that these facts

3  somehow render the PBS System "on sale" in this country.  Accordingly, in this section, we (1)

4  explain how the case law on which Microsoft relies only confirms that REC is entitled to

5  summary judgment of no § 102(b) "on sale" invalidity defense, and (2) then explain how none of

6  the facts of purported "United States activity" identified by Microsoft can save Microsoft from

7  summary judgment.

8          1.       **The relevant case law confirms that the "offer for sale" to Microsoft**
                    **did not occur "in this country."**

9

10         Microsoft relies on a Ninth Circuit case – *Robbins Co. v. Lawrence Mfg. Co*., 482 F.2d

11  426 (9th Cir. 1973) – for the proposition that "sufficient [United States] activity prefatory to

12  sale" can "meet the requirements of the § 102(b) statutory bar" even when the sale occurred

13  outside the country.  Contentions at 9.  *Robbins* does not, however, stand for the proposition that

14  *any* activity in the United States can render a foreign transaction within the § 102(b) statutory

15  bar.  Instead, the U.S. "activity prefatory to sale" that *Robbins* held sufficient to make "a sale

16  consummated in a foreign country" fall within the § 102(b) statutory bar is "an offer for a sale

17  made in this country."  *Id*. at 434.

18         Specifically, in *Robbins*, although the sale from Robbins was consummated outside this

19  country, (1) Robbins itself was based in Seattle, (2) "Robbins' offer was made" in Seattle, and

20  (3) the contract was negotiated in Seattle.  *Id*. at 428, 434, 435.  Accordingly, the Court held that

21  because "an offer for sale [was] made in this country," there "is sufficient prefatory activity

22  occurring here, to bring the matter within the statute."  *Id.* at 434.

23         Applying *Robbins* to this case, if (1) REC were a United States based company that (2)

24  proposed the Development Agreement from the United States, and (3) negotiated the

25  Development Agreement in the United States, then the "offer for sale" would be "in this

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 12

country" and the § 102(b) statutory bar could apply.  But these are not the facts of this case.

Instead, it is undisputed that (1) REC is a Canadian company that (2) proposed the Development

Agreement from Canada and (3) conducted any negotiations from its home in Canada.

Accordingly, the "offer for sale" was <u>not</u> made in this country, and the § 102(b) statutory bar

does not apply.  *See also B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 825 F. Supp. 65, 72

(D. Del. 1993) (relying on *Robbins* and holding that the § 102(b) on-sale bar does not apply

where "the offer is made abroad" even though "substantial other activities relating to the offer

occur[red] in the United States" because there must be "<u>an actual offer</u> in the United States").

  As a corollary to the premise that an actual offer prefatory to a foreign sale must be made

in the United States to render the sale within the § 102(b) statutory bar, there are two types of

pre-sale U.S. activities that do not render a foreign sale within §102(b) statutory bar – (1)

development activity and (2) standard sales activity.

  (1) <u>development activity</u>:  "[T]he 'substantial activity' test of *Robbins* refers to sales

activity, rather than product development."  *Synair Corp. v. American Industrial Tire, Inc.*, 223

USPQ 1021, 1022 (S.D. Tex. 1983) (Lyon Decl., Ex. 9); *see also Abaxis, Inc. v. Cepheid*, 2012

U.S. Dist. LEXIS 111609, *16 (N.D. Cal. 2012) ("[M]ere development and manufacture within

the United States would not render the offer for sale domestic."); *Goodrich*, 825 F. Supp. at 72

("[T]he Court will not consider the product development activities which occurred in Troy,

Ohio.").

  (2) <u>standard sales activity</u>:  "[S]tandard sales activit[ies]" within the United States cannot

trigger the § 102(b) "on sale" bar because they do not rise to the level of an "actual offer."[6]

---

[6]   "Only an offer which rises to the level of <u>a commercial offer for sale, one which</u> <u>the other party could make into a binding contract by simple acceptance</u> (assuming consideration), constitutes an offer for sale under § 102(b)."  *Group One, Ltd. v. Hallmark Cards*, Inc., 254 F.3d 1041, 1048 (Fed. Cir. 2001); *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1347-48 (Fed. Cir. 2003) (reversing a finding that "vigorous[ ] solicit[ation]" of manufacturers to purchase wheels made by the patented method

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 13

*Goodrich*, 825 F. Supp. at 72.  For example, activities like "telephone communications and preparation of proposals" within the United States are "[standard] sales activities … presumably … performed by any [domestic] company engaging in foreign commerce …. [T]o find that this activity constitutes 'substantial prefatory activity' would mean that virtually every offer made in a foreign country could satisfy the on-sale provision."  *Id.*; s*ee also Synair.,* 223 USPQ at 1022 (Lyon Decl., Ex. 9) (citing *Robbins* and holding that "the sale was not a prior sale in the United States under the statute" because "all of the discussions leading to the eventual sale took place in Canada [not the United States]").

As demonstrated below, under the *Robbins* analysis upon which Microsoft relies in its Contentions, Microsoft has no evidence of U.S. activity that renders the REC invention "on sale" in the United States.

### 2.     Microsoft offers no evidence that the PBS system was "on sale" in the United States.

In response to REC's contention interrogatory on Microsoft's § 102(b) "on sale" defense, Microsoft has identified all of its evidence in support of its theory that there is "sufficient [United States] activity prefatory to the sale" to render the system "on sale" in the United States. Contentions at 9.  None of this evidence saves Microsoft from summary judgment.

We address the five categories of evidence cited by Microsoft in turn.

### A.     REC's general "U.S. presence" is not evidence that the PBS system was "on sale" in the United States.

Microsoft contends that its "on-sale" bar defense is supported by REC's general "U.S. presence."  *See* Contentions at 9 ("REC had a U.S. presence throughout the late 1980s and early 1990s and actively promoted that fact to its customers, including but not limited to printing a

constituted an "offer to sell" because such activities are not "a commercial offer for sale as defined by contract law").

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 14

U.S. mailing address and/or telephone number on REC's letterhead, business cards, and checks."); *id.* ("REC had several U.S. customers to which he sold his software and provided support.").  This argument misses the mark.  Conducting activities in the United States unrelated to the "sale or offer for sale" in question has no bearing on the § 102(b) analysis.  Were it otherwise, the "on sale … in this country" language would be rendered meaningless.

> **B.  Mark Nicholson's activities are not evidence that the PBS system was "on sale" in the United States.**

Microsoft contends that the assistance Mark Nicholson provided REC from his home in Oregon constitutes "substantial [U.S.] activity prefatory to a sale" that renders a foreign sale within the § 102(b) statutory bar.  Specifically, Microsoft relies on Mr. Nicholson's activities of "documentation and testing of the code server" and "furthering the sales effort to Credit du Nord."  *See* Contentions at 9 ("Mr. Nicholson's duties included documentation and testing of PBS …"); *id.* at 10 ("Mr. Nicholson had Credit du Nord's software in the United States and used that software to test the code server prototype."); *id.* at 9 ("Mr. Nicholson's duties included helping Mr. Pickett to prepare for his demo of "PBS" to Credit du Nord in Paris."); *id.* at 7 ("Mr. Pickett traveled to Oregon to work on the code server with Mr. Nicholson, indicating that some of his activities furthering the sales effort to Credit du Nord occurred in the United States.")

Microsoft's reliance on Mr. Nicholson's presence in the United States fails for the following four reasons.

**Reason 1:**  Microsoft's theory is based on the Court's holding in *Robbins*, 482 F.2d 426 (Contentions at 9).  However, (1) the only "substantial activity prefatory to [the] sale occur[ring] in the United States" that *Robbins* held was sufficient to trigger the on sale bar is an actual "offer for sale" made in this country, *Robbins*, 482 F.2d at 434; and (2) none of the evidence cited by Microsoft demonstrates that Mr. Nicholson ever offered the PBS System for sale to CDN from the United States.  Instead, the unrefuted evidence demonstrates that Mr. Nicholson never could

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 15

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

have made such an offer because he lacked the authority to do so:

> Q.  At any time during your dealings with Mr. Pickett or CDN, did you have <u>any</u>
> <u>authority to enter sales or development contracts with CDN on behalf of Mr. Pickett</u> or
> CDN?   A:  <u>No</u>.

Lyon Decl., Ex. 3 (Nicholson depo) at 83:22-84:8.

Any offer for sale could only have been made by the one person with authority to do so,

Mr. Pickett, who resided and worked outside the country (in Canada).  Accordingly, Mr.

Nicholson's role is immaterial to the analysis, and there can be no on-sale bar.  *Cf. Aguayo v.*

*Universal Instruments Corp*, 356 F. Supp. 2d 699, 743 (S.D. Tex. 2005) (holding that the offer

for sale was made "in this country" because "the only Ford entity with the authority to do so"

was in this country).

**Reason 2:**  The assistance that Mr. Nicholson provided to Mr. Pickett is precisely the sort

of U.S. activities that have repeatedly been deemed insufficient to trigger the § 102(b) on sale

bar.  Specifically, Microsoft cites to (a) development work like "documentation and testing of the

[PBS] code server," and (b) activities "furthering the sales effort to Credit du Nord."  We address

(a) and (b) in turn.

(a) Microsoft relies on Mr. Nicholson's development work like "documentation and

testing," but "mere development and manufacture [of the product embodying the invention]

within the United States [does] not render the offer for sale domestic." *Abaxis*, 2012 U.S. Dist.

LEXIS 111609, *15.  Moreover, the extent of the development work performed by Mark

Nicholson in the United States falls well short of the extensive U.S. development work that has

been held insufficient to trigger the § 102(b) statutory bar.  For example, while Mr. Nicholson's

efforts focused on mere testing and documentation (indeed, he never even had a copy of the PBS

System during the relevant timeframe), far more extensive domestic development efforts are

disregarded in the § 102(b) analysis.  *See, e.g., Goodrich*, 825 F. Supp. at 72 (finding insufficient

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 16

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

U.S. activity to trigger the § 102(b) on sale bar even though "it is undisputed that a <u>full scale</u> <u>prototype of the invention was built and tested</u> in BFG's facilities <u>in the United States</u> and that the <u>extensive commercial, technical, and financial proposal volumes</u> comprising hundreds of pages <u>were generated in and sent from BFG's offices in Troy, Ohio.</u>")

> (b) Microsoft identifies purported U.S. sales activity with the following contention:
>
> Further, Mr. Pickett traveled to Oregon to work on the code server with Mr. Nicholson, indicating that some of his activities furthering the sales effort to Credit du Nord occurred in the United States.   See, e.g., Pickett Dep. Vol. II at 431:19-432:1.

Contentions at 7.  This contention suffers the following two flaws.

*First*, "standard sales activity" within the United States that does not rise to the level of an "actual offer" does not factor in to the § 102(b) "on sale" analysis.   *Goodrich*, 825 F. Supp. at 72.  Microsoft does not allege that an "actual offer" was made (or even that any potential offers were discussed) during the trip to Oregon, and therefore any purported "sales activities" occurring on this trip are irrelevant to the § 102(b) analysis.

*Second*, the evidence cited by Microsoft (431:19-432:1) does not even rise to the level of "standard sales activity" relating to the PBS System.  The cited evidence indicates that the time spent in Oregon may have been spent on "p-System maintenance," an ongoing task that Mr. Pickett performed (and Mr. Nicholson assisted) that did not have "anything to do with the 1989 contract."  Lyon Decl., Ex. 2 (Pickett depo) at 431:19-432:9.

**Reason 3:** The policy underlying the "in this country" limitation in § 102(b) compels the conclusion that Mr. Nicholson's U.S. activities do not give rise to an on-sale bar.  "[T]he policy underlying the 'in this country' limitation is that foreign … on sale activities … may not be accessible to the American public." *Aguayo*, 356 F. Supp. 2d at 743.  In accord with this policy, "[i]f the offer or sale is sufficiently accessible to create the potential for detrimental reliance by the American public, then the bar should apply." *Id.*  Conversely, if the offer for sale is not at all

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 17

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

accessible to the American public, then there can be no detrimental reliance, and the § 102(b)

statutory bar should not apply.

As explained above, any offer for sale to CDN (and all related activities) were not only

"[in]sufficiently accessible … by the American public," but they were not accessible by the

American public at all.  Mr. Nicholson was under a duty of confidentiality to REC, and he kept

all of his REC-related materials within the controlled environment of his home office.  Lyon

Decl., Ex. 3 (Nicholson depo) at 83:2-10, 83:11-21.  Accordingly, applying the § 102(b) bar to

this case would be directly contrary to the statute's underlying policy.

**Reason 4**:   Microsoft's contention that Mr. Nicholson's U.S. activities are "substantial

activity prefatory to a sale" fails because Mr. Nicholson's activities are not "prefatory to" (*i.e.*,

they do not occur before) a "sale."  For an activity to be prefatory to a sale, the activity must take

place before the sale.  *See, e.g.,* dictionary.com (defining prefatory as "of, involving, or serving

as a preface; introductory").  To the extent Microsoft contends that the July 1989 Development

Agreement is the "sale," all of Mr. Nicholson's U.S. activities cited by Microsoft take place *after*

the sale and are therefore not "prefatory to the sale."  *See* Contentions at 8-10.  To the extent

Microsoft contends that the Development Agreement is not the sale, but only the "offer for sale,"

then there is no subsequent "sale" to which the Agreement is prefatory.  Indeed, the sale

contemplated by the Development Agreement was never consummated – Credit du Nord was not

satisfied with the prototype, and REC was not paid.   Lyon Decl., Ex. 2 (Pickett depo) at 421:23-

422:6; 530:21-25.

      **C.**      **The fax to Jean Buet is not evidence that the PBS system was "on sale" in the United States.**

Microsoft contends that its "on sale" bar defense is supported by the following: "On July

31, 1990 REC sent a fax to Credit du Nord employee Jean Buet, offering to demonstrate "PBS"

to Jean Buet during his trip to the United States the following month."  *See* Contentions at 9;

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 18

Lyon Decl., Ex. 5.  This contention fails for two reasons.

*First*, there is no evidence that such a meeting ever occurred in the United States.  Instead, the evidence demonstrates that such a meeting did not occur in the United States.  *See, e.g.,* Pickett depo at 649:13-17 ("Q.  So your intention was for him to come to the United States and you're going to show him the system in the United States?  A.  Not true.").  The Development Agreement specified that "REC will be able to demonstrate the prototype version to CDN in either Vancouver or Paris.").  Lyon Decl., Ex. 4 at 1.  And, consistent with this provision, the fax references Mr. Buet's intention to come to Vancouver "during [his] trip to USA."  Lyon Decl., Ex. 5.  Mr. Pickett explains, "My understanding is that he was taking a trip to the USA and that he would take a side trip up to Vancouver to see the Code Server."  Lyon Decl., Ex. 2 (Pickett depo) at 649:22-650:1.

Moreover, it is not possible that Mr. Buet would have traveled to the United States (instead of Vancouver) to see the PBS System, or Code Server, because, as detailed above, the PBS System was not in the United States;  the only copy of the PBS System under development at that time was located in Vancouver with Mr. Pickett.  *See, e.g.,* Lyon Decl., Ex. 3 (Nicholson depo) at 70:7-14, 69:12-21; Ex. 2 (Pickett depo) at 665:13-16.

*Second*, even if the facts were different and there were evidence that REC demonstrated the PBS System to Jean Buet, the mere fact that this demonstration took place cannot support an on-sale bar.  "[Under] 35 U.S.C. § 102(b), an accused infringer must demonstrate by clear and convincing evidence that there was [1] a definite sale or offer to sell [2] more than one year before the application for the patent."  *3M*, 303 F.3d at 1301.  The purported meeting to demonstrate the PBS System would not satisfy either requirement (1) or (2).

(1) There is no evidence of a "definite sale or offer to sell" made at the meeting.  "Only an offer which rises to the level of a commercial offer for sale, one which the other party could

make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." *Group One,* 254 F.3d at 1048.  Accordingly, the mere occurrence of a demonstration, unaccompanied by evidence of a commercial offer for sale (*e.g*., terms concerning price, delivery schedule, quantity, duration), cannot support a finding of a "definite sale or offer to sell."

(2) There is no evidence that the meeting occurred "more than one year before the application for the patent" – *i.e*., prior to August 22, 1990.  The fax was dated July 31, 1990 and contemplates a meeting "next month" (Lyon Decl., Ex. 5) – *i.e*., a timeframe that includes August 23, 1990 through August 31, 1990, dates falling after August 22, 1990, when the "on-sale" bar of 35 U.S.C. § 102 no longer applies.

### D. REC's own legal analysis of § 102(b) is not evidence that the PBS system was "on sale" in the United States.

Microsoft contends that an analysis of the § 102(b) issue prepared by REC's attorney (Lyon Decl., Ex. 6) supports its contention that the PBS system was "on sale" in the United States.  *See* Contentions at 9 ("Additional evidence that Mr. Pickett "PBS" system was "on sale" prior to the August 22, 1990 "critical date" is REC's own workup of an on-sale bar analysis in the 2008 timeframe while shopping this case to multiple patent litigation firms.").

Microsoft has it backwards.  To the extent the legal analysis is "evidence" at all, it is evidence that the PBS System was <u>not</u> on sale in the United States.  The analysis explicitly states, "Even assuming the earliest dates possible, the 'offer for sale' between REC Software and CDN for future development is was [sic] <u>not 'on sale in this country', namely the United States.</u> <u>Thus 35 U.S.C. § 102(b) is not a statutory bar.</u>"  Lyon Decl., Ex. 6 at 127.

### E. The Canadian tax document is not evidence that the PBS system was "on sale" in the United States.

Microsoft relies on an excerpt from a document intended to secure funding from the

Canadian tax authority (Lyon Decl., Ex. 8 at 2) to support its contention that (1) "Credit du Nord ("CDN") is a Paris-based bank that in the 1990 time frame had hundreds of branches in multiple countries, including the United States," and (2) Mr. Pickett intended for "PBS" to be a product CDN would use at all of its locations."  Contentions at 8, 9.

This document cannot support Microsoft's domestic "on sale" theory for three reasons.

*First*, Mr. Pickett's intent of where his PBS product may be used is irrelevant to what Microsoft actually contends is the "sale" or "offer for sale" – *i.e.*, the July 1989 Development Agreement.  The Development Agreement was an agreement to "demonstrate a prototype … in Vancouver or Paris."  Lyon Decl., Ex. 4 at 1.  The Agreement was not an agreement for a usable product (*i.e.*, one that could be used at any CDN location).  In fact, the Agreement explicitly states that "REC will be unable to deliver a usable product within this part of the project."  *Id*. Accordingly, because a "usable product" is outside the scope of the "sale" or "offer for sale," Mr. Pickett's intent of where a usable product may be used is irrelevant to the "sale" or "offer for sale" contemplated in the Development Agreement.

*Second*, to the extent Microsoft contends that Mr. Pickett's intent of where his PBS product is used is relevant to a "sale" or "offer for sale" that occurred subsequent to the Development Agreement, Microsoft fails to identify that particular "sale" or "offer for sale." *See* Contentions at 8-10.  Microsoft cannot meet its burden without (a) pointing to the agreement or transaction that it contends is the "sale" or "offer for sale" and (b) demonstrating that the requirements of § 102(b) are satisfied by the agreement or transaction.   Microsoft has done neither (a) nor (b).  Instead, the only agreement or transaction Microsoft has identified is the Development Agreement addressed above.

*Third*, even if Microsoft were able to point to a subsequent "sale" or "offer for sale" for a usable PBS system, that Mr. Pickett expressed an intent in the Canadian tax document for his

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 21

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

PBS system to be used at all CDN locations is irrelevant to the inquiry for the following reasons:

(1) The document was never communicated to CDN, but was instead part of a submission to the Canadian tax authorities to secure funding.  Lyon Decl., Ex. 2 at 616:10-21; 619:22-23. Accordingly, there is no evidence that such an intent was manifested in any "sale" or "offer for sale" with CDN.

(2) When Mr. Pickett states that he intended for "PBS" to be used at all of its locations, he was not contemplating any locations in the United States because (a) Mr. Pickett was unaware that CDN had any U.S. locations (his dealings were specific to the Paris office), Lyon Decl., Ex. 2 at 626:9-20; and (b) the PBS product, which never made it outside the Paris office, would be useless to any CDN office outside of France (including any offices the U.S.).  Lyon Decl. Ex., 2 at 626:9-20; 627:4-25.

**V.      Conclusion.**

Because Microsoft has failed to raise a genuine issue of material fact that the claimed invention was (1) in "public use" or (2) "on sale" "in this country, more than one year prior to the date of the application for patent in the United States," 35 U.S.C. § 102(b), the Court should grant REC's motion for summary judgment and bar Microsoft from presenting at trial any contention that the asserted claims of the '936 patent are invalid under 35 U.S.C. Section 102(b).

Dated: July 31, 2013                      Respectfully submitted,

                                          By: */s/ Richard E. Lyon*
                                          Gregory S. Dovel (*pro hac vice*)
                                          greg@dovellaw.com
                                          Richard E. Lyon (*pro hac vice*)
                                          rick@dovellaw.com
                                          DOVEL & LUNER, LLP
                                          201 Santa Monica Boulevard, Suite 600
                                          Santa Monica, CA 90401
                                          Telephone: (310) 656-7066
                                          Facsimile: (310) 656-7069

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 22

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Bradley S. Keller (WSBA No. 10665)
bkeller@byrneskeller.com
Jofrey M. McWilliam (WSBA No. 28441)
jmcwilliam@byrneskeller.com
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile:  (206) 622-2522

*Counsel for Plaintiff REC Software USA, Inc.*

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 23

1

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record who are deemed to have consented to electronic service.

<u>/s/ Richard Lyon</u>
Richard Lyon

REC's MSJ re Microsoft's §102(b) Defenses
Case No. C11-554-JLR- 24

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066