**The Honorable James L. Robart**

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| REC Software USA, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Bamboo Solutions Corporation; Microsoft Corporation; SAP America, Inc.; and SAP AG, <br><br> Defendants. | CASE NO. C11-554-JLR <br><br> **REC's reply brief in support of motion for summary judgment that Microsoft has no invalidity defense under 35 U.S.C. § 102(b)** |

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**Table of Contents**

I.  Microsoft's on-sale defense 1 (the Buet fax) cannot survive summary judgment. .............1

    A.  Reason 1:  The Buet fax does not include an "offer for sale" of PBS. ....................1

    B.  Reason 2:  The Buet fax does not include a "commercial offer for sale" of PBS .................................................................................................................2

    C.  Reason 3:  The Buet fax cannot establish that PBS was on sale in this country .................................................................................................................4

II. Microsoft's on-sale defense 2 (the July 1989 development contract) cannot survive summary judgment. ..........................................................................................6

    A.  Reason 1: The agreement does not offer for sale a product "in this country." .................................................................................................................6

    B.  Reason 2: The agreement does not include a "commercial offer for sale." .............7

    C.  Microsoft's additional argument fails. .................................................................7

III. Microsoft's on-sale defense 3 (ongoing efforts to sell from U.S.) cannot survive summary judgment. ..........................................................................................8

IV. Microsoft's public use defense cannot survive summary judgment. ..................................9

    A.  Reason 1: Microsoft has presented no evidence that Mr. Nicholson's activities were "public." .........................................................................................9

    B.  Reason 2: Microsoft has presented no evidence of use of PBS in this country prior to August 22, 1990. ..........................................................................11

V.  Conclusion. ......................................................................................................................12

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- i

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

# Table of Authorities

**Cases**

*3M v. Chemque, Inc.*,
  303 F.3d 1294 (Fed. Cir. 2002) .................................................................................. 1, 3, 11

*Acumed LLC v. Advanced Surgical Servs.*,
  561 F.3d 199 (3rd Cir. 2009) .......................................................................................... 5, 11

*Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*,
  2004 U.S. App. LEXIS 16649 (Fed. Cir. 2004) ..................................................................... 10

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*,
  386 F.3d 1371 (Fed. Cir. 2004) ................................................................................. 5, 9, 10

*Clock Spring, L.P. v. Wrapmaster, Inc.*,
  560 F.3d 1317 (Fed. Cir. 2009) ................................................................................................ 9

*Continental Can Co. v. Monsanto Co.*,
  948 F.2d 1264 (Fed. Cir. 1991) ............................................................................................. 10

*Day v. Sears Holdings Corp.*,
  2013 U.S. Dist. LEXIS 41052 (C.D. Cal. March 13, 2013) ....................................................... 9

*Dey, L.P. v. Sunovion Pharms., Inc.*,
  715 F.3d 1351 (Fed. Cir. 2013) ............................................................................................. 10

*Eastman Kodak Co. v. Image Tech. Servs.*,
  504 U.S. 451 (1992) ................................................................................................................. 5

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*,
  471 F.3d 1369 (Fed. Cir. 2006) ............................................................................................... 9

*Fielder v. UAL Corp.*,
  218 F.3d 973 (9th Cir. 2000) .................................................................................................... 5

*Group One, Ltd. v. Hallmark Cards, Inc.*,
  254 F.3d 1041 (Fed. Cir. 2001) ............................................................................................ 2, 7

*In re Kollar*,
  286 F.3d 1326 (Fed. Cir. 2002) ............................................................................................ 2, 7

*Janssen Pharmaceutica v. Eon Labs Mfg.*,
  134 Fed. Appx. 425 (Fed. Cir. 2005) ....................................................................................... 9

*Kinzenbaw v. Deere & Co.*,
  741 F. 2d 383 (Fed. Cir. 1984) .............................................................................................. 10

*Lacks Indus. v. McKechnie Vehicle Components USA, Inc.*,
  322 F.3d 1335 (Fed. Cir. 2003) ............................................................................................ 7, 8

*Moleculon Research Corp. v. CBS, Inc.*,
  793 F.2d 1261 (Fed. Cir. 1986) ........................................................................................ 10, 12

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- ii

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

*Motionless Keyboard Co. v. Microsoft Corp.*,
　486 F.3d 1376 .................................................................................................................. 11

*Quinton Instruments Co. v. Impra, Inc.,*
　71 F.3d 1573 (Fed. Cir. 1995) ............................................................................................ 2

*Robbins Co. v. Lawrence Mfg. Co.*,
　482 F.2d 426 (9th Cir. 1973) .............................................................................................. 8

*Scaltech, Inc. v. Retec/Tetra, L.L.C.*,
　269 F.3d 1321 (Fed. Cir. 2001) ................................................................................. 1, 3, 6

*United States v. Lentz*,
　383 F.3d 191 (4th Cir. 2004) .............................................................................................. 5

*United States v. Shaltry*,
　232 F.3d 1046 (9th Cir.) ..................................................................................................... 9

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- iii

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

**Note Regarding Citations and Quotations**

- Unless otherwise noted, any exhibit referenced in this brief refers to the corresponding exhibit attached to the accompanying Declaration of Richard Lyon in support of REC's reply brief in support of motion for summary judgment that Microsoft has no invalidity defense under 35 U.S.C. § 102(b).

- Unless otherwise noted, any emphases appearing within quotations in this brief were added for purposes of this brief and do not appear in the original source.

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- iv

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

We address Microsoft's three "on-sale" defenses and one "public use" defense in turn.

## I.     Microsoft's on-sale defense 1 (the Buet fax) cannot survive summary judgment.

Microsoft's contention that the fax to Jean Buet satisfies the requirements of a §102(b) offer for sale, Opp. 9-13, cannot survive summary judgment for three independent reasons.

### A.     Reason 1:  The Buet fax does not include an "offer for sale" of PBS.

"[Under] 35 U.S.C. §102(b), an accused infringer <u>must demonstrate by clear and convincing evidence</u> that there was a <u>definite sale or offer to sell</u>." *3M v. Chemque, Inc*., 303 F.3d 1294, 1301 (Fed. Cir. 2002).  Microsoft admits that the Buet fax is an "Offer to <u>Demonstrate</u>" PBS, <u>not</u> a sale or offer to sell PBS. Opp. 9.  Because §102(b) does not encompass "offer[s] to demonstrate," the Buet fax cannot form the basis of an "on sale" bar defense.

Microsoft attempts to turn an "offer to demonstrate" into an "offer to sell" by relying on the Federal Circuit's decision in *Scaltech, Inc. v. Retec/Tetra, L.L.C*., 269 F.3d 1321, 1328 (Fed. Cir. 2001). Opp. 10.  *Scaltech*, however, in no way suggests (much less holds) that an offer to demonstrate constitutes an offer for sale.  To the contrary, *Scaltech* confirms that the §102(b) on-sale bar is not limited to offers to sell *products* that embody the invention, but also encompasses offers to sell *services*, or *processes*, that embody the invention: "The on sale bar rule applies to the sale of an 'invention,' and in this case, the invention was a process, as permitted by §101.  As a result, the process involved in this case is subject to §102(b)." *Scaltech* at 1328.  In particular, *Scaltech* held that a §102(b) "on sale" bar applies because the patentee, who was "in the business of recycling waste," (a) sent an "offer [that included price and quantity terms] to process refinery waste for Chevron," and (b) the contemplated method of processing refinery waste "satisf[ies] each claim limitation of the patent." *Id*. at 1323, 1329.  Accordingly, *Scaltech* would apply to the Buet fax if (a) the fax included an offer to sell REC's services of managing CDN's code using REC's PBS System, and (b) the method of managing code embodied the asserted claims.  But the

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 1

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

Buet fax included no such offer to sell. It merely included an offer to demonstrate. Because Microsoft does not (and cannot) identify in the Buet fax an offer for sale of a product or process, its reliance on *Scaltech* is misplaced.

### B. Reason 2: The Buet fax does not include a "commercial offer for sale" of PBS.

A mere offer for sale does not trigger the §102(b) statutory bar. "Only an offer which rises to the level of a <u>commercial</u> offer for sale … constitutes an offer for sale under §102(b)." *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001). The Buet fax does not rise to the level of a <u>commercial</u> offer for sale for two reasons.

*First*, under Federal Circuit law, an agreement for the development of a prototype, as opposed to a commercial product that can be used in the field, is <u>not</u> a "<u>commercial</u> offer for sale." *See In re Kollar*, 286 F.3d 1326, 1330 (Fed. Cir. 2002) ("Although the Board correctly determined that [patentee's] reduction to practice of the invention rendered it 'ready for patenting' … it incorrectly concluded that the invention was the subject of a 'commercial offer for sale'" because the "[a]greement was entered into [with Celanese] for the purpose of conducting research and development . . . with a goal to achieving … Celanese approval for a commercial [product] in the [f]ield."); *see also Quinton Instruments Co. v. Impra, Inc.,* 71 F.3d 1573, 1577 (Fed. Cir. 1995) (affirming district court finding that "selling two unmarketable prototypes" "was not a §102(b) sale" because "no commercialization took place here").

It is undisputed that the Buet fax included an offer to demonstrate a prototype, not a usable product. *See* Opp. 2 ("In this fax, Pickett offered to demonstrate the <u>prototype</u> PBS system."). Accordingly, the Buet fax cannot be a commercial "offer for sale."

*Second*, "a <u>commercial</u> offer for sale" under §102(b) must include an offer "which the other party could make into a binding contract by simple acceptance (assuming consideration)." *Group One,* 254 F.3d at 1048. "To determine if the offer is sufficiently definite, one must

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 2

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

examine the language of a proposal in accordance with the principles of general contract law." *Scaltech,* 269 F.3d at 1328. An offer for sale is "not a commercial offer for sale" if it does not present "willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *3M*, 303 F.3d at 1307.

Accordingly, to demonstrate that the Buet fax was a commercial offer to sale, Microsoft must point to (1) language in a proposal that (2) includes sufficiently definite terms that, (3) if accepted by Buet, would constitute a binding contract that concludes a sale for PBS. For example, if the Buet fax included (1) a specific proposal to sell PBS (2) with price terms, quantity, etc., (3) then, under general contracts terms, Buet could accept the proposal and conclude the sale. Microsoft does not and cannot point to evidence of requirements (1), (2), or (3) and therefore cannot demonstrate that the Buet fax is a <u>commercial</u> offer for sale.

Instead, Microsoft attempts to bypass the requirements in two different ways. Both fail.

<u>Failed attempt 1</u>: Microsoft argues that the "commercial" requirement does not apply to patented *methods*. Opp. 13 (arguing that it does not matter "that there was no definite offer for sale of products (with quantity, etc.)" because "offering to perform a patented method itself triggers section 102(b)."). Microsoft misstates the law. The requirement that an offer for sale be commercial – *i.e.*, with sufficiently definite terms such that acceptance would result in a binding contract – does not only apply to patented products. It applies with equal force to patented *methods*. Indeed, the *Scaltech* case that Microsoft relies upon to support its argument explicitly held that "[t]o determine if the offer is sufficiently definite, one must examine the language of a proposal in accordance with … contract law." *Scaltech,* 269 F.3d at 1329 (finding that an offer to sell a service embodying patented method was commercial because "formal proposal documents indicated that the 'quotation is based on one centrifuge,' and that 'this offer is firm for 90 days'").

<u>Failed attempt 2</u>: Microsoft parrots the legal requirements with an unsupported conclusion:

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 3

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

There is also sufficient evidence for the jury to find that the offer was commercial. It was definite enough to be accepted: if M. Buet said yes, a demonstration of REC's PBS system, as defined by the parties' prior development agreement, would occur when M. Buet visited the United States.

Opp. 10. Thus, according to Microsoft, if Buet accepted the offer for a demonstration of PBS, this would result in a binding agreement that concluded a sale of PBS. *First*, this conclusion lacks any supporting evidence. Microsoft fails to identify evidence of any definite terms in the Buet fax (because there are none) that, under contract principles, would bind CDN to purchase PBS if Buet attended the demonstration. *Second*, this conclusion is contrary to the factual record. We know that the Buet fax (or any other document) did not include terms binding CDN to purchase PBS if Buet attended the demonstration because (1) Buet did attend demonstration, and (2) CDN remained free to decide whether to purchase PBS. Ex. 1 (9/14/90 memo) at 1 (at "Demonstration of PBS given to J. Buet," "Buet expressed concern that CDN decision on the future of PBS might NOT be made soon"). And, ultimately, CDN chose not to purchase PBS. *See* Mot. 18.

**C.     Reason 3:  The Buet fax cannot establish that PBS was on sale in this country.**

Microsoft must present evidence that can lead a reasonable trier of fact to conclude that it has met its clear and convincing burden of demonstrating that PBS was on sale "in this country."

The Buet fax is not evidence that PSB System was on sale "in this country." The Buet fax does not reference "a demonstration in the USA." It references a demonstration to be shown to Jean Buet "during [his] trip to USA." Dkt #420-5. This language can mean that (1) during the course of his "trip to USA," Jean Buet would see the demonstration at a U.S. location (as Microsoft contends, Opp. 11); or (2) during the course of his "trip to USA," Jean Buet would travel to Mr. Pickett's home in Vancouver, Canada to see the demonstration (as Mr. Pickett testified, Ex. 2 at 648:22-650:25). Microsoft contends that determining whether the language refers to (1) a U.S. demonstration or (2) a Vancouver demonstration is an issue that should go "to the jury" because "all reasonable inferences must be resolved in Microsoft's favor." Opp. 11.

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 4

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

Microsoft would be correct if these inferences were based on evidence that could reasonably lead a jury to conclude either (1) or (2). But that is not the case here. "The nonmoving party's inferences [must] be reasonable in order to reach the jury," *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468 (1992), and consideration of the evidence of record demonstrates that any inference supporting Microsoft's contention of a U.S. demonstration is not reasonable.

*First*, "an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." *United States v. Lentz*, 383 F.3d 191, 226 (4th Cir. 2004). Here, Microsoft has no evidence of a U.S. demonstration. Microsoft merely contends that a U.S. demonstration is a possibility because of the purported presence of a copy of PBS in the United States.[1] Moreover, because it is undisputed that there was also copy of PBS in Vancouver, its assertion of a U.S. demonstration amounts to no more than guesswork or speculation. *See Acumed LLC v. Advanced Surgical Servs.,* 561 F.3d 199, 228 (3rd Cir. 2009) ("speculation and conjecture may not defeat a motion for summary judgment").[2]

*Second*, the "duty to draw all reasonable inferences in favor of the nonmoving party does not permit us to draw an inference in the face of undisputed evidence to the contrary." *Fielder v. UAL Corp.*, 218 F.3d 973, 993 (9th Cir. 2000). REC has presented undisputed evidence that the demonstration was in Vancouver, not the United States. In particular, Mr. Pickett's memo to CDN, drafted in September 1990 just after the demonstration to Jean Buet, is undisputed evidence that the demonstration was not "in this country." Ex. 1 at 1. The demonstration was in Vancouver:

> 1. Summary of Vancouver Visit and Status
>    - Demonstration of PBS given to J. Buet

---

[1] Microsoft's inference is even less reliable because the evidence demonstrates that there was *not* a copy of PBS in the United States at this time. *See* Section IV(B), *infra*.
[2] Microsoft's reliance on speculation is all the more improper given Microsoft's "clear and convincing evidentiary burden." *Bernhardt, L.L.C. v. Collezione Europa USA, Inc*., 386 F.3d 1371, 1376 (Fed. Cir. 2004).

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 5

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

In sum, each of Reasons 1, 2, and 3 provides an independent basis why Microsoft's §102(b) "on sale" defense based on "The Offer to Demonstrate to Buet" (Opp. 9-13) cannot survive summary judgment.

## II. Microsoft's on-sale defense 2 (the July 1989 development contract) cannot survive summary judgment.

Microsoft argues that the July 1989 development contract was an offer for sale "in this country" because (1) "REC intended its PBS system to replace CDN's prior systems at all 600 CDN branches," and (2) "[a]t the time, CDN had a branch in the United States, in New York." Opp. 13.  This defense cannot survive summary judgment for two independent reasons.

### A. Reason 1: The agreement does not offer for sale a product "in this country."

Microsoft's attempt to satisfy the "in this country" requirement of §102(b) by drawing a connection between the July 1989 development contract and CDN's New York office must be rejected.  Under the law governing §102(b) offers for sale, no such connection exists.

"To determine if the offer [constitutes a §102(b) offer for sale], one must examine the language of a proposal in accordance with … contract law." *Scaltech,* 269 F.3d at 1328.  By examining the language of the proposal in the July 1989 contract, it is crystal clear that the proposal has no connection to CDN's New York office.  The contract was not a proposal for the "PBS System to replace CDN's prior systems at all 600 [CDN] branches," as Microsoft contends.  Opp. 13.  To the contrary, it was a proposal for a "prototype" that is not usable at any CDN branch.  The contract explicitly states that "it is hereby agreed that this funding will produce at best only a prototype version" and that "[i]t is not anticipated that REC will be able to deliver a useable product within this part of the project."  Dkt # 420-4.  Accordingly, delivering a usable PBS System to replace CDN's prior systems at any of its branches – including the New York branch – is expressly outside the scope of the July 1989 development contract.

Because Microsoft fails in its attempt to connect the development contract to CDN's New

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 6

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

York branch – *i.e.*, the only one of its 600 branches that is located in the U.S. – the "in this country" requirement of §102(b) is not satisfied.

### B.     Reason 2: The agreement does not include a "commercial offer for sale."

As explained above, Federal Circuit law requires that a §102(b) offer for sale be a "commercial offer for sale," *Group One*, 254 F.3d at 1048, and an agreement to develop a prototype is not a "commercial offer for sale," *Kollar*, 286 F.3d at 1330.  Accordingly, because the July 1989 agreement (entitled, "Proposal for prototype…," Dkt #420-4) is a contract to develop a prototype, it is not a commercial offer for sale, and §102(b) does not apply.

### C.     Microsoft's additional argument fails.

Microsoft makes one additional flawed argument based on the July 1989 agreement:

> It is true that the agreement says "It is not anticipated that REC will be able to deliver a useable product within *this part* of the project" …, but **[1]** even that language implies that "the project" is contemplated to continue after the prototype, and **[2]** the agreement also refers to REC's proposal to replace CDN's prior systems with PBS.

Opp. 14 (enumeration added).  The two enumerated sub-parts of this argument are address in turn.

(1)  Microsoft contends that, because the prototype development agreement refers to "this part of the project," there is an implication that there will be another agreement governing a later part of the project where a usable product is generated.  Opp. 14.  However, a mere implication of another unidentified agreement with unidentified terms does not even approach the standard – *i.e.*, "a formal offer under contract law principles" – that is required for a §102(b) "offer for sale."  *See Lacks Indus. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1348 (Fed. Cir. 2003) (holding that district court "erred" by "rel[ying] on a standard requiring something less than a formal offer under contract law principles" in §102(b) analysis).

(2)  Microsoft contends that "the agreement also refers to REC's proposal to replace CDN's prior systems with PBS," again suggesting that there is another unidentified agreement for a usable product.  Opp. 14.  This contention (2) fails for the same reason as contention (1).  Also,

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 7

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

the language that Microsoft cites to support this argument specifically refers to the "prototype," not a usable product:  "Proposal for prototype 32-bit p-System replacement 'PBS.'"  Dkt # 420-4.

### III.     Microsoft's on-sale defense 3 (ongoing efforts to sell from U.S.) cannot survive summary judgment.

Microsoft's contention that Mr. Nicholson's activities in the U.S. constitute a §102(b) offer for sale takes two forms:  (1) that "[t]here is ample evidence for the jury to find that Mr. Nicholson made offers to CDN," and (2) that Mr. Nicholson's U.S. activities are "sufficient 'prefatory' activity in the United States under *Robbins*," Opp. 16, 15.  We address each in turn.

(1) Microsoft alleges that "Mr. Nicholson made offers to CDN," but it fails to identify *any* of these purported offers.  Instead, Microsoft alleges that Mr. Nicholson (a) "had access to the right people," (b) "wrote and sent status reports," (c) "provided input to Mr. Pickett," (d) "coached Mr. Pickett," and (e) was paid by Mr. Pickett.  Opp. 15.  None of these activities is "a formal offer under contract law principles" as required by §102(b).  *Lacks Indus.*, 322 F.3d at 1348.

(2) Microsoft alleges that Mr. Nicholson's U.S. activities are "sufficient 'prefatory' activity in the United States" under *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 434 (9th Cir. 1973) to constitute a §102(b) offer for sale in the United States.  Opp. 15.  Microsoft's theory is premised on a misunderstanding of *Robbins*.   For the "prefatory activity" theory of *Robbins* to apply, Microsoft must first identify an actual sale of PBS.  *Robbins* did not hold that "*prefatory* activity" in the U.S. by itself constitutes a §102(b) on sale bar.  Instead, *Robbins* held that (1) if "a sale [is] consummated in a foreign country" that meets all the requirements of §102(b) except that the sale is not "in this country," (2) the Court may consider U.S. activity "prefatory" to the sale to determine if the sale nonetheless may be considered "in this country."  *Id.* at 434.

Here, Microsoft has not identified (and cannot identify) any "sale [of PBS] consummated in a foreign country" that Mr. Nicholson's U.S. activities are "prefatory to."  The undisputed evidence shows that no sale of the PBS prototype was ever consummated – Credit du Nord was

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 8

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

not satisfied with the prototype, and REC was not paid.  *See* Mot. at 18.[3]  Accordingly, its prefatory activity argument fails.

### IV.     Microsoft's public use defense cannot survive summary judgment.

Microsoft's public use defense cannot survive summary judgment for two reasons.

#### A.     Reason 1: Microsoft has presented no evidence that Mr. Nicholson's activities were "public."

Microsoft's contention that Mr. Nicholson's activities were "public" is as follows: "Since Mr. Nicholson had no … limitation, restriction, or obligation [of secrecy], his assistance to Mr. Pickett was public."  Opp. 18 (citing *Clock Spring, L.P. v. Wrapmaster, Inc*., 560 F.3d 1317, 1325 (Fed. Cir. 2009)).[4]  This contention fails for two reasons.

*First,* Microsoft merely recites the standard – *i.e.*, "under no limitation, restriction, or obligation of secrecy" – without explaining how the Federal Circuit applies this standard.  The Federal Circuit, time and time again, has explained that when applying the "under no limitation, restriction, or obligation of secrecy" standard, "a court must consider how the totality of the circumstances comports with the policies underlying the … public use bars."  *Bernhardt,* 386 F.3d at 1379; *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc*., 471 F.3d 1369, 1380 (Fed. Cir. 2006) (same); *Janssen Pharmaceutica v. Eon Labs Mfg*., 134 Fed. Appx. 425, 430 (Fed. Cir. 2005)

---

[3]     Moreover, if Microsoft were to shift course and allege that (a) the July 1989 contract or (b) Buet demonstration were actual sales, instead of offers to sell, this could not save its "on sale" defense for three reasons.  *First*, Microsoft has not contended (and provided no evidence) that (a) or (b) were sales and therefore this defense is waived.  *See, e.g., Day v. Sears Holdings Corp*., 2013 U.S. Dist. LEXIS 41052, *46 (C.D. Cal. March 13, 2013) ("Failure to raise issues in opposition to summary judgment functions as a waiver of the argument."); *United States v. Shaltry*, 232 F.3d 1046, 1052 (9th Cir. 2000) ("argument was waived for failure to raise the issue in opposition to summary judgment").  *Second*, as detailed in REC's Motion, Microsoft has not presented evidence of the type of U.S. activities (*i.e.*, a U.S. offer for sale) sufficient to render a foreign sale "in this country" under *Robbins* and its progeny.  *See* Mot. 12-14.  *Third*, because Mr. Nicholson's development and testing activities occurred after the 1989 Development Agreement, these activities are not prefatory to (*i.e.*, occurring before) the 1989 Agreement, and *Robbins* would not apply.  *See* Opp. 3 ("Mr. Nicholson's U.S. residence corresponded with all of his development and testing of the PBS system, beginning no later than April 1990.").

[4]     In *Clock Spring*, the use deemed "public" was an open "demonstration [of the invention that] was accessible to the public" at large and attended by industry competitors, *id*. at 1325, not confidential development work by a single individual hired by the patentee to work from his home office.  *See* Mot. 6-8.

REC's Reply iso MSJ on MSFT's § 102(b) Defenses  
Case No. C11-554-JLR- 9

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

(same).  Determining how the totality of the circumstances comports with the underlying policies is the multi-factor analysis that REC applies in its Motion.  *See id.*  In particular, REC demonstrated how Federal Circuit law governing each factor compels the conclusion that Mr. Nicholson's assistance to Mr. Pickett was <u>not</u> public.  Mot. 5-9.  Microsoft's Opposition altogether disregards the public use factors.

<span style="margin-left:2em"></span><u>Second</u>, Microsoft's conclusion that Mr. Nicholson had no "limitation, restriction, or obligation of secrecy" is based on incorrect law.  In particular, Microsoft argues, "Under the law [it] is sufficient … to find Mr. Nicholson's work public" because "REC has offered no evidence that there was a confidentiality agreement."  Opp. 18.  But what Microsoft says is "the law" is the opposite of the law.  The Federal Circuit has "<u>*never* required a formal confidentiality agreement to show non-public use</u>.… [I]n the absence of such an agreement, we simply ask whether there were circumstances creating a similar expectation of secrecy."  *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1357 (Fed. Cir. 2013); *see also Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1266 (Fed. Cir. 1986) ("no public use" despite the lack of "confidentiality agreement"); *Bernhardt*, 386 F.3d at 1381 (same); *Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*, 2004 U.S. App. LEXIS 16649, *15-16 (Fed. Cir. 2004) (same).  Here, REC has offered unrefuted evidence of a similar expectation of secrecy.  Mr. Nicholson, who was hired by Mr. Pickett to assist him on a software development project where confidentiality is of the utmost importance, understood that "at all times during [his] work with Mr. Pickett or REC," his work "was always confidential."  Dkt # 420-3 at 83:2-10.  Despite bearing the clear and convincing burden, Microsoft has offered no contrary evidence.[5]

---

[5] Microsoft also argues that even if secret, Mr. Nicholson's work was public because of its commercial character.  Opp. 19 (citing *Kinzenbaw v. Deere & Co.*, 741 F. 2d 383, 390 (Fed. Cir. 1984)).  Microsoft again mischaracterizes the law.  This "commercial use" applies to situations where a secret process (*e.g.*, use of a "seed planter," *see Kinzenbaw* at 390) is used to produce products (*e.g.*, "40,000 acres" of "crops," *see id.*) which are in turn sold to the public—not in cases where, as here, a product suitable for commercial use has not yet been developed.  *See Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1270 (Fed. Cir. 1991) (holding that there was no on-sale bar even though "hope was surely commercial sales" because the product was still being developed, and no sales were

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 10

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

**B.    Reason 2: Microsoft has presented no evidence of use of PBS in this country prior to August 22, 1990.**

To survive summary judgment, Microsoft must also identify evidence that Mr. Nicholson used PBS in the United States prior to August 22, 1990.  *See 3M*, 303 F.3d at 1307 (reversing denial of JMOL of no §102(b) anticipation because "there is no direct evidence of [the patented product's] use").  In its attempt to do so, Microsoft has identified five excerpts of deposition testimony, but none of this testimony is actual evidence of Mr. Nicholson using PBS in the U.S. prior to August 22, 1990.  Instead, Microsoft relies on pure speculation and guesswork, which cannot defeat a motion for summary judgment.  *See e.g., Acumed,* 561 F.3d at 228.  We address Microsoft's five excerpts of deposition testimony in turn.

(1) Microsoft cites Pickett's testimony that Nicholson had copies of "CDN's software" to use for testing and debugging.  Opp. 3-4.  But CDN software is not PBS.  As both Pickett and Nicholson explained, Nicholson's testing was limited to working on CDN software to identify module information from CDN's *General* program, which he provided to Pickett.  *See* Mot. 4-5.  Pickett, in turn, used this information to develop PBS to properly run *General*.  *Id*.

(2) Microsoft cites Pickett's testimony that "we got the code server working."  Opp. 4, 12, 18.  <u>First</u>, as explained above, Nicholson did help get PBS working (via his testing and debugging), but he did not need a copy of PBS to do so.  <u>Second</u>, Microsoft must present evidence that Mr. Nicholson had a copy of PBS <u>prior to August 22, 1990</u>, but the cited testimony explicitly references "<u>September of October of 1990</u>."  *Id*.

(3) Microsoft cites Pickett's testimony that he brought Nicholson copy of OS/2 in July 1990.  Opp. 4, 12, 18.  Microsoft speculates he did so to enable Nicholson to run PBS.  *Id*.  <u>First</u>, the cited testimony is itself speculation: "<u>it's possible</u> I took him a copy of the most recent version

---

ever made); *see also Motionless Keyboard Co. v. Microsoft Corp*., 486 F.3d 1376, 1384, 1385 (Fed. Cir. 2007) (reversing district court that relied on *Kinzebaw* to find public use because the use did not occur "in the normal course of business").

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 11

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

of OS/2" because "there might have been an update at that time." Ex. 2 at 683:11-684:9. Accordingly, Microsoft's purported "evidence" is speculation based upon speculation. *Second*, the very next question asked Pickett if he brought Nicholson a copy of PBS on the same visit, and Pickett replied "I don't think so." *Id*. This is not clear and convincing evidence.

(4) Microsoft cites Pickett's testimony that he visited Nicholson in Oregon on July 13, 1990 and then ties this to evidence of PBS source code revisions (Dkt #451-7) made that same weekend. Opp. 4-5, 12, 18. But examination of Pickett's deposition testimony in context shows that he is merely confirming the date (July 13, 1990) of an entry on an expense report corresponding to the purchase of his flight to Oregon. Ex. 2 at 684:19-686:6; Ex. 3. It is pure speculation (and highly unlikely) that Pickett purchased the ticket on the same day he flew. Moreover, this speculation is refuted by the fact that the cited source code revisions (Dkt #451-7) came from Mr. Pickett's own files (maintained in Canada), not from Mr. Nicholson.

(5) Microsoft cites Pickett's testimony that he provided Nicholson a copy of PBS. Opp. 5, 13, 18. But evidence that Nicholson had a copy of PBS, unaccompanied by evidence that he had a copy *before* the critical date, is not relevant under the law of §102(b). And Microsoft acknowledges that Pickett "could not confirm whether it was before or after the critical date." *Id*.

In sum, Microsoft's "evidence" that Mr. Nicholson used "PBS" in the United States prior to the critical date is not evidence at all. It is pure speculation that is contrary to the actual evidence of record. No reasonable trier of fact can conclude that Microsoft has met its clear and convincing burden based on this record. *See, e.g., Moleculon*, 793 F.2d at 1266-67 ("Defendant had the burden … to prove public use with facts supported by clear and convincing evidence," but "we see only the brush strokes of speculation. The record lacks hard evidence.").

V. **Conclusion.**

For the foregoing reasons, REC's motion for summary judgment must be granted.

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 12

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

Dated: August 30, 2013            Respectfully submitted,

By: */s/ Richard E. Lyon*
Gregory S. Dovel (*pro hac vice*)
greg@dovellaw.com
Richard E. Lyon (*pro hac vice*)
rick@dovellaw.com
DOVEL & LUNER, LLP
201 Santa Monica Boulevard, Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Bradley S. Keller (WSBA No. 10665)
bkeller@byrneskeller.com
Jofrey M. McWilliam (WSBA No. 28441)
jmcwilliam@byrneskeller.com
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile:  (206) 622-2522

*Counsel for Plaintiff REC Software USA, Inc.*

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 13

DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record who are deemed to have consented to electronic service.

/s/ Richard Lyon
Richard Lyon

REC's Reply iso MSJ on MSFT's § 102(b) Defenses
Case No. C11-554-JLR- 14

**DOVEL & LUNER LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
(310) 656-7066